Charles R. Leick, Respondent, v. Missouri Plating Company, Appellant.—211 S. W. 2d 77.

Kansas City Court of Appeals. Opinion delivered April 5, 1948.

*Langworthy, Matz & Linde, Clyde J. Linde* and *Robert B. Langworthy* for appellant.

*Blackmar, Newkirk, Eager, Swanson & Midgley* and *Ralph M. Jones* for respondent.

DEW, J.—This is an action brought to recover the balance claimed to be due for services and for other benefits under alleged terms of employment. At the close of plaintiff's evidence the court sustained the separate motion of defendant A. L. Wilson, president of the corporation defendant, for a directed verdict. Verdict and judgment were in plaintiff's favor against defendant Missouri Plating Company, a corporation, in the sum of $1810.54, of which plaintiff later remitted $525, leaving final judgment in the sum of $1285.54. The defendant corporation has appealed.

In plaintiff's petition he alleged that the defendant Missouri Plating Company is a corporation located in Kansas City, Missouri, and the defendant A. L. Wilson is president thereof; that plaintiff was employed by said company and entered performance of his duties July 2, 1945; that subsequently, to-wit, July 28, 1945, plaintiff and

defendants entered into the following written contract covering his compensation:

"Employment Agreement

It is hereby stipulated and agreed by and between Missouri Plating Company, a corporation, and Charles R. Leick that said Charles R. Leick shall become associated with Missouri Plating Company as an employee to perform duties supervisory in nature in connection with the management of the office and sales activity of said Missouri Plating Company and that said duties constitute the office of general manager of office and sales.

That in consideration of acceptance of the above employment and the performance of the above office of General Manager in charge of office and sales, Said Missouri Plating Company, a corporation, its officers, heirs and assigns agree to the following allowances and compensation:

1. That Missouri Plating Co. shall defray the moving expenses of said Charles R. Leick and family and their household effects from Kirkwood, Missouri to Kansas City, Missouri and if it is necessary to defray the expense of, not exceeding two months storage of said furniture and hotel accommodations for a period not exceeding one month.

2. That the weekly wage to be paid to said Charles R. Leick shall be $100.00 until such time as office and bookkeeping and accounting records are added to the present duties of said Charles R. Leick, at which time said weekly wage shall be $125.00 per week.

3. That an additional incentive payment of 5% of the net profits of the corporation shall be allotted to said Charles R. Leick each month, based on monthly balance sheet and profit and loss statement calculated according to standard accounting practices.

4. The corporation will allow said Charles R. Leick an allowance of $50.00 per month for the use of his motor vehicle for business purposes of the corporation in and about Kansas City, Missouri and within a radius of 25 miles. All additional motor travel outside this area, on company business, shall be compensated for at a rate of 5¢ per mile.

5. This contract contains all the agreements between the parties thereto and shall run for a period of 5 years from date of this agreement, and if not specifically renewed, cancelled or amended before 90 days from expiration of this agreement, the contract shall be automatically renewed for like periods. However, this contract may be cancelled by either party upon 90 days written notice, during which time said agreement shall remain in full force and effect.

Signed, sealed and delivered in the City of Kansas City, Missouri this 28th day of July, 1945, this agreement is to be effective as of

August 1, 1945 as to the general provisions and to paragraph number four and five, and shall be retroactive to July 2 on paragraphs one and two.

> MISSOURI PLATING COMPANY
> By A. L. Wilson
> President
> Accepted
> Charles R. Leick"

Witness W. S. Felton

Witness ——————

The petition further alleged that defendant had paid plaintiff's salary to and including the week ending August 18, 1945, less old age and income tax deductions; that on August 28, 1945, defendants gave notice of the termination of his employment as of August 25, 1945, and delivered to him a check dated August 24, 1945, for $87.60, which contained the words: "Payment for all wages and expenses in full", which check plaintiff has not cashed. It was further alleged that plaintiff tendered his services for the full ninety days provided in the employment agreement, but said tender was refused; that under the agreement the sum of $324.69 is due him from the defendants for expense of moving his furniture to Kansas City, as aforesaid, and the sum of $50 to defray transportation of himself and family to Kansas City; that there is further due the sum of $100 a week for and during the ninety day period following notice of cancellation, in the total sum of $1300; that he is entitled to the further sum of $6000, 5 per cent of the proximate amount of the net profits of defendant company from August 1, 1945 to November 26, 1945; he is further entitled to $50 for the use of his car during August, 1945. The prayer is for the total sum of $7,834.69, with interest and costs.

By its separate answer the defendant company admits the execution of the written agreement referred to, admits the payment to the plaintiff of $100 a week, less deductions, to and including the week of August 18, 1945; admits giving notice on August 28, 1945 of termination of plaintiff's employment as of August 25, 1945; admits giving of the check for $87.60, dated August 24, 1945, with the typewritten statement thereon, as alleged, and generally denies all other allegations of the petition. Further answering, the defendant company alleged that plaintiff did not perform his duties, but conducted himself in an unsatisfactory manner, and his services were terminated August 25, 1945. The answer further pleaded that at the time of the written agreement referred to in plaintiff's petition there was in effect statutes of the United States relating to war powers of Congress, prohibiting increase in wage rates granted through voluntary agreements, or otherwise, except as shall be approved by the appropriate federal agency; that the written agreement pleaded in plaintiff's petition was such a voluntary agreement, and was not and has not

since been approved by said federal agency, and therefore plaintiff is not entitled to recover by reason of said agreement. The answer further alleged that the petition fails to state a claim upon which relief can be granted.

Plaintiff testified to his prior experience, training and types of employment, his employment by the defendant, the execution of the later contract pleaded in his petition, and duties he performed while in defendant's employ, receipt of the payments, as pleaded, the circumstances of his discharge on August 25, 1945, by notice handed him on August 28, as described in the pleadings, his tender and the refusal of his services for the 90 day period; the use of his car for August, 1945, for which he had not been paid, the refusal by the defendant of the agreement to pay the expenses of moving plaintiff's family and household goods to Kansas City, and the subsequent payment therefor by himself in the amounts shown by receipted dray tickets and the regular railroad rates. This expense was not substantially contro-. verted as to amounts. He testified to other places of employment since his discharge.

Defendant's evidence in effect was that plaintiff's services were unsatisfactory; that he was not qualified to perform the duties as he represented; that he was irregular in his hours; that defendant had withdrawn authority to charge to it the cost of moving plaintiff's family and household goods to Kansas City at the time of the discharge; that plaintiff had spent time and had rendered some services during his employment; that defendant had received a letter from plaintiff's counsel tendering plaintiff's services during the 90 day period; that application for approval of the agreement in question had been made to the National War Labor Board on August 27 or 28, 1945, and that same had never been approved or disapproved; that defendant still owed plaintiff $87.60 for services during the week ending August 25, 1945, and $50 car allowance for August, 1945, both of which defendant tendered in court. Executive Order No. 9250 was introduced, issued under the Emergency Price Control Act of 1942, which order prohibited increases in salaries without approval of the National War Labor Board; also regulations authorizing the Commissioner of Internal Revenue to approve applications for such contracts for increased salary. In this connection plaintiff introduced Executive Order No. 9599, discontinuing as of August 18, 1945, the requirement of such approval with certain exceptions.

In rebuttal plaintiff described more fully the services he performed for the defendant, and the testimony of other witnesses strongly tended to verify plaintiff's testimony.

Upon cross-examination plaintiff was required to state, over his objection, that by part time employment during the 90 day period he had earned some income elsewhere, partly on the basis of $300 a month, and the remainder on the basis of $225 a month. The court

later instructed the jury to disregard such earnings. The verdict and judgment were for the plaintiff in the sum of $1810.54. Two months after the filing of the motion for new trial defendant asked leave to amend his answer to conform to the proof, which proffered amended answer alleged that plaintiff had earned $525 during the 90 day period after notice of termination. This motion for leave was not ruled on but at the time the motion for new trial was overruled, the record shows that plaintiff remitted $525 of the judgment, whereupon a new judgment was entered for $1285.54, as of February 12, 1947.

Defendant's first point is that the court erred in overruling its motion for a directed verdict because the contract sued on is void under federal laws and regulations then in effect. It cites Section 1 of the Stabilization Act of 1942 (50 U. S. C. App. Sec. 961), authorizing the President to issue general orders stabilizing prices, wages, and salaries; Section 5, prohibiting salaries in contravention of the regulations of the said act; Executive Order 9250 (50 U. S. C. App. following Section 901, 50 U. S. C. A. App. pp. 314, 315), prohibiting increases in salaries without notice to and approval by the National War Labor Board, and Treasury Decision No. 5295, under authority of the Commissioner of Internal Revenue, Director of Salary Stabilization Unit (Par. 4 of Section 1002.12) (C. C. H. Labor Law Service, par. 14,024), requiring approval of new job classifications. Under this point defendant first contends that under the evidence plaintiff's employment constituted a new job classification, and, not having been approved by the War Labor Board, the contract of employment was void and unenforceable. It will be recalled that plaintiff first went to work for defendant on July 2, 1945; that on July 28, the parties entered into a written agreement, part of which was to be effective as of July 2, and the remainder on August 1, 1945; that on August 28, he was given a letter of discharge as of August 25, and the application for approval of the agreement was filed August 27 or 28. In the meantime, on August 18, 1945, such requirement of approval in such cases had been discontinued by Executive Order No. 9599. No action was taken on the application. This was an affirmative defense and should have been specifically pleaded in the answer. Thacker v. American Foundry Co., et al., 177 P. 2d 322, 325. Moreover, on September 4, 1943, Treasury Decision No. 5295, 8 Fed. Reg. 12429, at page 12432, requiring approval of new job classifications, was amended as follows:

"Provided, however, That if the salary rates in question are not in excess of the minimum of those prevailing for similar job classifications within his own organization or if no such rates are available, then within the local area on September 15, 1942, the approval of the Commissioner is not required".

The contract being otherwise valid on its face it was defendant's burden to show its invalidity by reason of its illegal performance, or means of adoption under the temporary emergency regulations, and to plead and prove that it came strictly within such restrictions. There was no evidence as to the prevailing rates for such job classifications. Hence we adopt the construction of that regulation found in the Thacker case, supra, wherein the District Court of Appeals of California in a similar situation said, l. c. 326:

"The record is silent as to any such evidence and the exception has not been negatived. Under such conditions the trial judge was justified in believing the terms of plaintiff's employment were in consonance with the minimum of those holding similar positions, if any, in defendant's business organization or those within the local area on the prescribed date. Such being the case the approval of the commissioner was not required as a prerequisite to defendant's obligation to pay the amount found by the evidence to be due plaintiff as compensation for his services so rendered.

\* \* \* \*

"If the method provided for carrying into effect the principal purpose of an agreement has been executed and accepted by both parties, and the whole contract in itself is valid, it will not be permitted to fall because of any supposed invalidity attached to the means adopted. \* \* \* Since nothing appears on the face of the instrument itself indicating its invalidity the burden was upon the defendant to establish his defense".

Defendant also cites authorities holding salary agreements void under the laws and regulations in question if increases are provided for by such agreements and no approval of the Board has been obtained. In the instant case the only increases provided for by plaintiff's written agreement not covered by the terms of his original employment were his car allowance and a percentage of the profits.\* Defendant admits and tenders the car allowance asked for, and that item is not now for consideration. The only items submitted to the jury in this case were the plaintiff's monthly wages, car allowance and expense of moving family and household goods to Kansas City. No profits were shown or asked for at the trial and none can be considered as constituting any part of the verdict and judgment. No increase being herein recovered and the contract being otherwise generally lawful on its face, the argument remains that, nevertheless, the whole contract is void because it provided for an increase in compensation. We do not agree to such construction of the regulations in question. It was said in Nussenbaum v. Chambers, 14 C. C. H. Labor Cases, par. 64,272 (Vol. LA, C. C. H. Labor Law Serv. p. 72,619) Mass. Sup. Jud. Ct. decided January 19, 1948:

"We do not believe that the policy embodied in the Wage Stabilization Act required that the whole contract of employment should be held invalid so that no salary or wages could be recovered under it for services actually rendered simply because the contract included an unapproved increase. Such a rule would be needlessly harsh upon many wage earners and salaried persons ignorant of the elaborate requirements of the Federal regulations and not considering themselves responsible for their observance. We think the policy of the law would be fully sustained if recovery were refused of an unauthorized increase but allowed to the extent of the lawful wages or salaries in effect before the increase".

Defendant next argues that the written contract was, in fact, not a contract of employment, but merely an agreement as to compensation for a prior oral hiring on July 2, which, being silent as to duration, could be canceled by either party at will. On this point authorities are cited affecting oral contracts of no stipulated duration. Although the oral contract of the original employment was silent as to duration, that element was definitely supplied by the solemn agreement in writing as to services thereafter rendered, and by defendant's execution of that instrument, it is now in no position to deny its plain words, tenor and effect.

Defendant makes numerous objections to plaintiff's instructions, to the refusal of some of its instructions, to admission of evidence regarding a former draft of the contract, and regarding sale of plaintiff's home in St. Louis on account of employment by defendant in Kansas City, exclusion of evidence regarding total compensation paid to plaintiff, and on account of reference to the "Employment Contract", and to remarks made in argument claimed to be prejudicial. These objections, in our opinion, are immaterial and do not materially affect the merits of the action for the reasons hereinafter stated.

The contract was valid and enforceable as we have held, and was the contract of employment in effect. It provided on its face the remedy of either party desiring to terminate the same prior to the expiration of the five year term. A 90 days' notice in writing was required during which "the agreement shall remain in full force and effect". There being no showing that further performance of the contract was impossible by reason of death, insanity, illness or other such happening, the cancellation clause requires strict compliance. Further performance after discharge not being permitted by the defendant, and plaintiff having admittedly tendered his services for the full 90 day period agreed to, the plaintiff became entitled, under the express provisions of the contract, as a matter of law, to the monthly wage for the 90 days following August 28, 1945. 35 Am. Jur. 463, Section 27. The mere dissatisfaction with plaintiff's services did not alter the cancellation provision. Remittitur has been made of the full amount claimed by defendant to have been earned elsewhere by the plaintiff

during the 90 day period. Under such condition of the pleadings, the law and the evidence, plaintiff was entitled to a directed verdict for all the items submitted to the jury and, therefore, the aforementioned objections to the instructions, inclusion and exclusion of evidence, and remarks of counsel are immaterial, and do not materially affect the merits of the action. The reversal of this cause would be a futile formality. Renshaw v. Reynolds, 317 Mo. 484, l. c. 491, 297 S. W. 374.

The judgment being clearly for the right party and there being no substantial error against the appellant in the trial of the cause materially affecting the merits of the action, the judgment is affirmed. All concur.