# CHAI MANAGEMENT, INC. v. GEORGE LEIBOWITZ

[No. 510, September Term, 1981.]

*Decided January 11, 1982.*

The cause was argued before MOORE, WILNER and COUCH, JJ.

*Leo Howard Lubow,* with whom were *Thomas C. Swiss* and *Freishtat, Schwartz & Sandler* on the brief, for appellant.

*Kenneth P. Niman,* with whom were *Kaplan, Heyman, Greenberg, Engelman & Belgrad, P.A.* on the brief, for appellee.

Couch, J., delivered the opinion of the Court.

George Leibowitz, the appellee, was summarily discharged by his employer, Chai Management, Inc., the appellant, and brought suit against the employer claiming that he was entitled to a written 60-day notice of termination, which was not given. He thus claims that he should be paid his wages for that period. The Superior Court for Baltimore City, agreeing with appellee's argument, granted his motion for a directed verdict and awarded him $3,495.89. It is from the resulting judgment entered in appellee's favor that this appeal is taken, wherein a narrow question is presented:

> Whether an employer who fires an employee for cause (upon a material breach of contract) must be required to pay the employee for the notice period designated by the employment contract?

## The Facts

The facts pertinent to this appeal are gleaned from the parties' agreed Statement of Facts.[1] In January, 1978, the appellee, a licensed nursing administrator, entered into an employment contract with Chai Management, Inc., a company that contracts to provide housekeeping and dietary services to nursing homes. In pertinent part the employment contract provided:

> "I, the undersigned accept the appointment as a Licensed Nursing Administrator of Chai Management, Inc. to be effective this date and to continue until terminated. This contract can be terminated by either party with a written 60-day notice."

---

1. The parties have agreed upon the Statement of Facts and jointly proffered same pursuant to Md. Rule 1028g.

The appellee was thereafter appointed as administrator of the Federal Hill Nursing Home and had the responsibility for assuring that all services were properly performed and for the resolution of all housekeeping emergencies that arose at the facility.

Sonya Gershowitz, the owner and president of appellant corporation, testified at trial that in June of 1978, near the end of the month, she learned that the facility was out of toilet tissue. She then instructed the appellee to secure some and told him that "he was under no circumstances to leave the facility until there was toilet paper there." Contradicting his employer's testimony, the employee testified that she merely told him that "you had better get some toilet paper," and that based on past experience he believed that only the storeroom was out of toilet paper, not that the whole facility was out. He stated that he left the nursing home, intending to call the purchasing agent the following morning to secure an afternoon delivery, and went to the Downtown Racquet Club.

When the facility was that day visited by members of the Health Department, the lack of toilet paper was discovered and Ms. Gershowitz herself secured a supply thereof for the nursing home. The following day appellee was fired "because of his gross negligence, insubordination and his breach of contract." Appellee demanded payment for the balance of the 60-day notice period; this was refused by appellant and suit ensued.

Because this appeal is from the trial court's direction of a verdict in the employee's favor, "the evidence and all logical inferences deducible therefrom must be considered in the light most favorable to the [non-moving party's] cause of action." *Campbell v. Patton,* 227 Md. 125, 134, 175 A.2d 761, 766 (1961). For the purposes of this appeal, we must accept as true the employer's evidence that the employee wilfully disobeyed his employer's explicit command to obtain immediately more toilet paper.

## The Contentions

In essence, the employer argues that the employee breached the contract and thus forfeited any right he had to the 60-day termination notice or cash equivalent. The employee contends that, under the clear language of the contract, he was entitled to notice of termination or to be paid for that period. In support of his argument the employee relies primarily on *Van Horn Drug v. Noland,* Okla., 323 P.2d 366 (1958), and *Leick v. Missouri Plating Co.,* 240 Mo. App. 565, 211 S.W.2d 77 (1948). The parties appear to agree, and our own research confirms, that there is no Maryland authority squarely on point.

In our view, neither of these cases is dispositive of the narrow issue here. Both involve factual situations where the employee did not breach the contract and the employer failed to give the proper notice. In *Leick,* the employment contract was for a five year term but provided that it may be "cancelled by either party upon 90 days written notice, during which time said agreement shall remain in full force and effect." 211 S.W.2d at 79. The employer there, charging that the employee "did not perform his duties, but conducted himself in an unsatisfactory manner," *id.,* fired the employee without regard to the notice provision. The employee sued to recover, *inter alia,* wages due him for the 90-day notice period. The jury heard the evidence and found for the employee. The employer then appealed the denial of its motion for a directed verdict. It thus asked the appellate court to find the termination justified as a matter of law. The jury had clearly been presented with a factual question of whether the employee had materially breached the contract. By finding for the employee, it must have answered that question in the negative. In reaching its decision, we assume that the appellate court viewed the evidence and all reasonable inferences deducible therefrom in the light most favorable to the non-moving party, the employee, and concluded that the employee had not breached the contract. It held that when there is no material breach, only a subjective dissatisfaction of one party, the notice provisions of

the contract must be fulfilled: "mere dissatisfaction with plaintiff's services did not alter the cancellation provision .... There being no showing that further performance of the contract was impossible by reason of death, insanity, illness, or other such happening, the cancellation clause requires strict compliance." 211 S.W.2d at 80. Thus, *Leick* involved a situation where the employee did not materially breach the contract and the employer fired him without giving him the notice required by the contract. In the case *sub judice,* we must accept as true the reasonable inference that the employee materially breached the contract by refusing to obey the employer's reasonable instruction to obtain toilet paper. The facts here are different than in *Leick.* Here, the case was not ripe for a directed verdict and the jury must determine whether the employee has materially breached the contract.

*Van Horn Drug v. Noland,* Okla., 323 P.2d 366 (1958), relied, in part, on *Leick.* The employment contract in *Van Horn* provided for the termination of the contract by either party at any time "with or without just cause," by giving 30 days notice. 323 P.2d at 369. The employer argued that it fired the employee because of its "dissatisfaction with [the employee's] services by reason of his conduct, disloyalty, negligence, and inefficient management of the business." *Id.* at 368. The employee denied these allegations and contended the real reason was so that the employer could "effect a lucrative lease on its premises to a third party." Id. The court instructed the jury that it

> "should return a verdict for plaintiff [employee] if it found plaintiff had complied substantially with the terms of the contract, and that the defendant [employer] failed to give the thirty days notice, and further instructed that if the jury did not so find, but found that defendant was in good faith dissatisfied with plaintiff's services, then their verdict should be for defendant." *Id.* at 370.

The jury apparently believed the employee because it found in his favor. The appellant employer argued on appeal that

the trial court erred in not granting its motion for a directed verdict. The court held that the motion for a directed verdict was properly denied because "under the facts and circumstances shown by the record, the contract of employment could not be terminated by the [employer] without giving the thirty days written notice . . . ." *Id.* at 370. *i.e.,* if the jury believed the employee, then it would have found that he had not breached the contract and was thus entitled to hold the employer to the provisions of the contract. Here again the court was faced with a non-breaching employee and an employer who had failed to perform his contractual obligations regarding notice.

Thus, neither *Leick* nor *Van Horn* contemplated the situation which exists in the present case. Here, because we must accept as true the inference that the employee had breached the contract, we are faced with a situation where a breaching employee is subsequently seeking the benefit of one of the provisions of the contract. It is as if the employee has breached the provision that requires him to go to work and then sues under the provision which specifies his salary. Once an employee has breached the contract, he cannot subsequently force the employer to perform except in unusual circumstances, *e.g.,* if the employee has a vested right in commissions which accrue at a date subsequent to his breach. "There must be compliance with a provision in a contract of employment . . . for a stipulated notice of the termination of the employment, and a discharge or abandonment without the required notice is unlawful *except where valid grounds authorizing the termination of the employment exist. . . .* A party claiming the benefit of a notice under the contract of employment must show compliance on his part with the terms of the contract." 56 C.J.S. *Master & Servant* § 32(c) (emphasis added) (footnotes omitted). "Accordingly, an employee rightfully discharged for incompetency, misconduct, or other reason forfeits the balance of his pay which might have been due him after the fulfillment of his contract." 53 Am. Jur. 2d *Master & Servant* § 45 (footnote omitted).

Decisions of other states' appellate courts support our decision here. In *Basse v. Allen*, 43 Tex. 481 (1875), an employment contract provided for one month's notice before termination. The employer alleged that the employee had been, *inter alia*, absent from work and intoxicated on the job. The court held that for the employee to hold the employer to the notice provision, he must not have been in breach of the employment contract: "If the plaintiff [employee] claims the benefit of the month's notice provided for in the agreement, he must show compliance with its terms." *Id.* at 483. This is exactly the situation in the case at bar.

In *Ehlers v. Langley & Michaels Co.*, 72 Cal. App. 214, 237 P. 55 (1925), there was an employment contract which provided for 30 days notice before termination. The employer fired the employee and disregarded the notice provision, charging him with a wilful violation of a company rule that subcontractors should not be paid until the customer accepted the work. The employee denied that such a rule existed, the jury found in favor of the employee, and the employer appealed. The appellate court found that the rule contended by the employer did not exist: "It would thus appear from respondent's testimony which, in view of the verdict of the jury in his favor must be taken as true, that the rule . . . was not effective. . . ." *Id.* at 219-220, 237 P. at 57. Because there was no breach of contract by the employee, the court held that the employer was required to perform its duties under the contract:

> "While it is doubtless the law, as appellant contends, that willful disobedience by the servant warrants peremptory dismissal by the master, nevertheless before the law will allow an employer to ignore the specific terms of a contract of employment, which requires notice to be given the employee of its proposed termination, it must appear that there has been some rule, order, or instruction of the employer violated, and that such violation was committed willfully and deliberately on the part of the employee." *Id.*

In the case at bar, by viewing the evidence in the light most favorable to the employer, such a violation was shown. If the jury believed the employer's evidence, then peremptory dismissal would have been justified. Direction of a verdict in the employee's favor was therefore error.

In *Berry v. Goodyear Tire and Rubber Co.*, 270 S.C. 489, 242 S.E.2d 551 (1978), the employee had been employed by Goodyear for 19 years. Goodyear had a release pay policy which provided certain sums to employees who were laid off or released. The employee claimed a medical disability and agreed to furnish Goodyear with a statement from his doctor relating to his inability to return to work. The statement was never produced, nor did the employee sign a medical records release form which was requested by Goodyear. Yet the employee argued that he was entitled to release pay benefits.

The Supreme Court of South Carolina held that the employee, who had engaged in a competing business with Goodyear while on paid sick leave, breached his duty of loyalty to his employer and such was sufficient to justify his termination and to disqualify "him from any right he may have had to 'release pay' compensation." *Id.* at 492, 242 S.E.2d at 553. We view the right to release pay as analogous to that of the right to either receive notice of termination or to be paid for the notice period upon termination. To be entitled to release pay or notice, an employee must not be in breach of contract.

In *Barisa v. Charitable Research Foundation, Inc.*, Del. Super., 287 A.2d 679, *aff'd* Del. Supr., 299 A.2d 430 (1972), the employment contract provided for one year's salary as severance pay in the event the employee was terminated without cause. In the event of termination for cause, the employee was to forfeit any right to further compensation. The employee admitted that he knowingly violated a company rule relating to disposal of surplus property by purchasing it at sale through another. The jury found in favor of the employee, but the appellate court held that a directed verdict should have been granted for the employer and stated:

"To require an employer to continue to employ an administrator after the discovery of clandestine arrangements and his admission of surreptitious conduct would be contrary to established principles of law . . . and morality. When an employer, because of an employee's wrongful conduct, can no longer place the necessary faith and trust in an employee, he is entitled to dismiss such employee without penalty. This is especially true where the employee has a responsible position where faith and trust are required." *Id.* at 682. (Citation omitted).

Although the contract in the case at bar is not as explicit as the contract in *Barisa,* the same policy considerations apply. To require a non-breaching employer to retain, for the notice period, an employee who has breached his duty of loyalty and trust, would be unfair. The D.C. Court of Appeals used a similar rationale in *Brock v. Mutual Reports,* 397 A.2d 149 (1979). The court found that the employee had been terminated for cause and stated:

"In every employment contract, the employee promises either expressly or by implication that he or she will perform the work in a diligent and reasonably skillful manner. . . . An employer, therefore, may discharge an employee who fails to perform his or her duties accordingly. . . . This rule is based on the practical consideration that an employer cannot be expected to retain an employee who is inefficient and cannot competently perform the job for which he or she was hired." *Id.* at 152-53 (citations omitted).

The employment contract in *H. Vincent Allen & Associates, Inc. v. Weiss,* 63 Ill. App.3d 285, 379 N.E.2d 765, *cert. denied* (1978), is almost identical to the one before us. It provided for 90 days notice before termination, but was otherwise silent as to duration. The court stated that

"the legal relationship between these parties was an employment at will with the contract being sub-

ject to termination by either party upon giving of 90-day notice. . . . However, this fact does not and cannot eliminate the basic principle of the law regarding employment contracts which gives the employer the right of discharge for good cause even though such right is not stated in the agreement and even though the agreement may delineate certain specific causes for discharge." *Id.* at 294-95, 379 N.E.2d at 772 (citation omitted).

The *Allen* court quoted from *Hosking v. Hollander Manufacturing Co.,* 114 Ohio App. 70, 175 N.E.2d 201 (1961). In that case, the employment contract contained a 60 day notice provision and the employee was terminated for cause. The Ohio Court of Appeals reversed a jury verdict in favor of the employee on the ground that an employee rightfully discharged for cause forfeits any termination pay which may otherwise have been due him under the notice provision of the contract.

An employment contract may be either for a stated term or at will. When the contract is at will, it may be terminated by either party at any time. *Giardina v. Farms Co.,* 25 Md. App. 201, 208, 333 A.2d 366, 370 (1975). However, when the contract is for a stated term, it may only be terminated before the end of the term by just cause. *Dorrance v. Hoopes,* 122 Md. 344, 350, 90 A. 92, 94 (1914). In the case at bar, the contract requires 60 days notice before termination, *i.e.,* the employee has a continual right to employment until 60 days after the employer gives him notice. Therefore, the right of an employee to be retained under the contract here is virtually indistinguishable from that under a contract for a definite term. The only difference is that the contract at issue here does not have a definite termination date. The contract is continually in force until 60 days after the giving of notice. The employee may not be discharged before the notice period has run, unless just cause for termination exists. If such cause exists, the employee may be terminated before the notice period has run.

In cases like the present one, a party to a contract may

rightfully cancel or terminate the contract even though the other party has not breached it, as long as he complies with the notice provision. However, we can neither find nor imagine an interpretation of such a notice provision that would require a non-breaching employer to give an employee, who blatantly breaches his employment contract, the notice specified in the contract to which a non-breaching employee would be entitled. We think it is elementary that an employee, to be entitled to his wages, must fulfill the *quid pro quo, i.e.,* do his job called for under the employment contract. In *Maryland Credit Finance Corporation v. Hagerty,* 216 Md. 83, 92, 139 A.2d 230, 234 (1958), the Court of Appeals stated:

> "Where the breach of duty by the employee was wilful and material, as we find it to have been in the case before us, the Courts have held consistently that the employee has forfeited at least compensation which has not already been earned. The rule was recognized, although found inapplicable on the facts, in *Shipley v. Meadowbrook Club,* 211 Md. 142, 148. It was there said that: 'We accept the general principle that an agent who is guilty of fraud upon his principal, particularly where there is a conflicting interest, concealment, or a wilful and deliberate breach of his contract, may be denied compensation for his services.' "

Considering the evidence in the light most favorable to the employer, the evidence clearly raised a question of whether there was a material breach of the contract that would justify dismissal of the employee. The trial judge should have denied appellee's motion for a directed verdict and submitted the case to the jury for its determination as to whether appellee breached the contract.

*Judgment reversed; case remanded for a new trial.*
*Costs to abide the result.*