985 F.2d 553
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Ronald S. SHIVERS, Plaintiff-Appellant,
v.
JOHN H. HARLAND COMPANY, INCORPORATED, Defendant-Appellee.
 No. 91-1513.
 United States Court of Appeals,
Fourth Circuit.
 Argued: October 31, 1991
Decided: February 3, 1993
 
 Appeal from the United States District Court for the District of South Carolina, at Columbia. C. Weston Houck, District Judge. (CA-87-3081-3)
 James Donald Scott, Columbia, South Carolina, for Appellant.
 William Parham Simpson, HAYNSWORTH, MARION, MCKAY & GUERARD, Columbia, South Carolina, for Appellee.
 D.S.C.
 AFFIRMED.
 Before ERVIN, Chief Judge, RUSSELL, Circuit Judge, and HEANEY, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 Ronald S. Shivers ("Shivers") sued his former employer, John H. Harland Company, Inc. ("Harland"), seeking to recover damages for wrongful discharge. Harland defended on the ground that it had discharged Shivers for cause. At trial in the district court, the jury found that Harland had wrongfully discharged Shivers and awarded him $301,137.76. The district court, in response to Harland's post-verdict motion to set aside the jury's verdict and limit Shivers's damages to the amount of pay he would have received for fifteen days after he was discharged (the "notice period" rule), granted the motion, and Shivers appealed. We affirm.
 
 
 2
 * The facts necessary to an understanding of this controversy may be briefly stated:
 
 
 3
 At age eighteen, Shivers began to work for Harland. He received uniformly high performance reviews and there were no reprimands on his employment record. He rose from an initial position as a printing press operator to that of shift production supervisor.
 
 
 4
 After working with Harland for fourteen years, Shivers began to associate socially with a female hourly employee on the third shift. Shivers's supervisors found out about this relationship and questioned him about it on January 27, 1987. Shivers admitted both his involvement and his knowledge of Harland's long-standing policy against such relationships. On January 31, 1987 Harland fired Shivers without notice or a warning. Harland paid Shivers five weeks' severance pay and four weeks' vacation pay.
 
 
 5
 Shivers brought his wrongful discharge action in the state courts of South Carolina. As a diverse party, Harland removed the case to the United States District Court for the District of South Carolina, where it defended on the ground that Shivers had been dismissed for cause.
 
 
 6
 Three documents were focused upon at trial, namely (1) the "Employment Production Agreement"; (2) the "Employee Manual"; and (3) the "Employee Handbook." Harland relied on Paragraph 3.2(b) of the Employment Production Agreement, which allowed for termination for cause and without notice if an employee was guilty of willful misconduct. It was Harland's initial position that Shivers's disregard of the company policy against relationships between supervisors and hourly employees constituted willful misconduct. That policy also was set forth in the Employee Manual. The Employee Handbook listed fourteen actions justifying termination, including interference with production, a charge leveled at Shivers. The Handbook also provided that employees committing less serious infractions should be given a warning and that the Handbook was not a part of an employee's employment contract.
 
 
 7
 In addition to outlining grounds for termination for cause, the Handbook stated, in Paragraph 3.2(a), that either the employee or employer could terminate employment at any time, for any reason, upon fifteen days' notice. At trial, Harland sought a directed verdict, arguing that Paragraph 3.2(a) limited the damages that Shivers might receive for wrongful discharge to the notice period of fifteen days. The district court denied that motion. As previously noted, the jury then found that Harland had wrongfully discharged Shivers and awarded him damages in the sum of $301,137.76. This award was supposed to represent the difference between Shivers's salary at Harland and his new salary, multiplied by the number of years until his expected retirement.
 
 
 8
 At the direction of the district judge, the jury specifically found (1) that the Production Employment Agreement and the Employee Manual, but not the Employee Handbook, constituted Shivers's contract and (2) that Harland breached Paragraph 3.2(b) of the Production Employment Agreement, the termination for cause provision. The jury also determined that Paragraph 3.2(b) was ambiguous.
 
 
 9
 As previously noted, Harland then filed its post-verdict motion to set aside the jury verdict and limit Shivers's damages to the amount of pay he would have received for the fifteen days after he was discharged (the "notice period" rule). The district court granted that motion, believing that the South Carolina courts would apply the notice period rule to this factual situation. Shivers then appealed to this court.
 
 II
 
 10
 Following oral arguments, we found that the South Carolina statutes do not provide an answer to this issue, and that the courts of that state have not spoken on the notice period rule. We therefore decided that it would be appropriate for us to certify the question of whether the notice period rule applied to limit the damages for wrongful discharge under the circumstances of this case. See S.C. R. App. P. 228.
 
 
 11
 Therefore, on January 9, 1992 we certified to the Supreme Court of South Carolina a question reading as follows:
 
 
 12
 Under South Carolina law, where a provision in a contract of employment allows the employer to terminate the contract for any reason upon giving 15 days' notice, the employer instead discharges the employee for cause under another provision of the contract without giving notice, and a jury finds that the discharge for cause is wrongful, is the employee's recovery for wrongful breach limited as a matter of law to the amount of pay and other benefits he would have received during the notice period?
 
 
 13
 On September 21, 1992, the Supreme Court of South Carolina graciously answered our inquiry in the affirmative, holding that Shivers's damages should be limited by the fifteen-day notice period set forth in the Production Employment Agreement. Shivers v. John H. Harland Co., Inc., S.E.2d (S.C. 1992).
 
 
 14
 As explanation for its decision, the South Carolina Supreme Court said in part:
 
 
 15
 Under South Carolina law, an employment contract containing a notice provision is a contract for a definite term. Young v. McKelvey, 286 S.C. 119, [123,] 333 S.E.2d 566[, 568] (1985) (citing Chai Management, Inc. v. Leibowitz, 50 Md. App. 504, [512-13,] 439 A.2d 34[, 39] (1982)). An employment contract containing a notice provision does not provide for a specific termination date, but is continually in force until notice is given. Once notice is given, the employment contract assumes a definite term, this being the last day of the notice period. Id. at 123, 333 S.E.2d at 568.
 
 
 16
 A person hired under an employment contract for a definite term may not be discharged before the completion of the term without just cause. See id. When an employee is wrongfully discharged under a contract for a definite term, the measure of damages generally is the wages for the unexpired portion of the term. Latimer v. York Cotton Mills, 66 S.C. 135, 44 S.E. 559[, 560] (X1903). This measure of damages allows an employee to receive the benefit of the bargain by putting him in as good a position as he would have been had the contract been performed. See Restatement (Second) of Contracts § 344 (1981); see also 11 S. Williston, A Treatise on the Law of Contracts § 1338 (3d ed. 1968).
 
 
 17
 ....
 
 
 18
 Turning to the question before us, we find that Harland and Shivers entered into an employment contract for a definite term. The jury found that Harland breached the contract by discharging Shivers without just cause. As a result, Shivers is entitled to be placed in the same position he would have occupied had the Agreement been performed. Here, the Agreement would have been performed had Harland given Shivers fifteen days notice that he was terminated. The giving of notice then would have triggered a definite expiration date of the Agreement. Harland would have been precluded from discharging Shivers before the expiration of the notice period without just cause. There being no such cause, Shivers would have been entitled to continue working until the Agreement expired.
 
 
 19
 Allowing Shivers to receive the wages and other benefits he would have accrued during the fifteen day notice period places him in as good a position as he would have been had Harland performed under the Agreement. Accordingly, we conclude that the trial judge was correct in limiting Shivers's damages as a matter of law to the amount of pay and other benefits he would have received during the fifteen day notice period.
 
 
 20
 Id.
 
 III
 
 21
 The answer of the South Carolina Supreme Court to the question certified to it disposed of the controlling issue in this appeal and established the limitation of Shivers's damages to the fifteen-day notice period. Therefore, we affirm the district court's grant of Harland's post-verdict motion to set aside the jury's verdict and limit Shivers's damages to the amount of pay he would have received for the fifteen days after he was discharged.
 
 AFFIRMED