989 A.2d 1227

**WEICHERT CO. OF MARYLAND, INC.**

v.

**Dorothy Crago FAUST, et al.**

**Nos. 2255 and 2846, Sept. Term, 2008.**

Court of Special Appeals of Maryland.

March 1, 2010.

2

John B. Flood and Sharon P. Margello (Jennifer Rygiel–Boyd, Ogletree, Deakins, Nash, Smoak & Stewart PC, on the brief), Washington, DC, for appellant.

Stewart S. Manela (Randall A. Brater, Leah C. Montesano, Arent Fox LLP, on the brief), Washington, DC, for appellee.

Panel: DEBORAH S. EYLER, MATRICCIANI and KEHOE, JJ.

MATRICCIANI, J.

These consolidated appeals arise from an employment dispute between appellant, Weichert Company of Maryland, Inc. ("Weichert"), and appellee, Dorothy Crago Faust ("Faust"). Weichert brought suit against Faust in the Circuit Court for Montgomery County, alleging breach of contract, employee piracy, breach of fiduciary duty, and unfair competition. Faust counterclaimed for breach of contract, fraud, negligent misrepresentation, and violation of the Maryland Wage Payment and Collection Law ("Maryland Wage Act"), Maryland Code (1991, 2008 Repl.Vol.), §§ 3–501 *et seq.* of the Labor and Employment Article. A jury found Faust liable for breach of her duty of loyalty and awarded Weichert $250,000.00 in damages. The jury also found that Weichert violated the Maryland Wage Act and awarded Faust $116,000.00. After trial, both parties petitioned for attorney's fees and expenses under Faust's employment agreement with Weichert. The trial court granted Faust's petition and awarded her $946,014.50 in attorney's fees, but denied Weichert's petition. Weichert now seeks our review of those rulings.

## QUESTION PRESENTED

Weichert presented two questions, which we have rephrased and consolidated for clarity, in light of the law and our discussion:

I. Did the court err when it granted appellee's petition for attorney's fees of $946,014.50 and denied appellant's petition under the fee-shifting provision of their employment contract?

For the reasons set forth below, we shall affirm the judgment of the circuit court.

## FACTS AND PROCEEDINGS

Faust was a Weichert vice-president and manager of its Bethesda, Maryland real estate brokerage office. Faust's employment agreement (the "Agreement") with Weichert included a "Manager's Addendum," which contained a non-

solicitation clause. The non-solicitation clause ("Paragraph 22") comprised an introduction and eight subsections, the last of which was a mutual fee-shifting provision (the "Fee Provision"):

> H. If [Weichert] brings any action(s) (including an action seeking injunctive relief) to enforce its rights hereunder and a judgment is entered in [Weichert]'s favor, then [Faust] shall reimburse [Weichert] for the amount of [Weichert]'s attorney fees incurred in pursuing and obtaining the judgment. If [Faust] prevails in such a suit, then [Weichert] shall reimburse [Faust] for the amount of [Faust]'s fees incurred in same.

Faust resigned from Weichert's employ in 2003 and began working for the Long & Foster Companies ("Long and Foster"). Weichert devotes a significant portion of its brief to the details of Faust's departure, most of which are not relevant to this appeal. Those that are will be supplemented by our discussion, where necessary.

What ensued was three years of litigation, culminating in a five week trial on Weichert's claims and Faust's counterclaims. Weichert alleged breach of contract, employee piracy, breach of fiduciary duty, and unfair competition.[1] Faust brought counterclaims for Maryland Wage Act violations, breach of contract, fraud, and negligent misrepresentation. The jury found Faust liable only for breach of her duty of loyalty and awarded Weichert $250,000.00 in damages.[2] On Faust's counterclaims, the jury found on one count that Weichert had violated the Maryland Wage Act and awarded Faust $116,000.00 in damages.

---

1. Weichert joined Long and Foster in its employee piracy and unfair competition claims and added an individual count of tortious interference with contractual and business relationships of another. Although Weichert named Long and Foster as an Faust, Weichert has not appealed any judgment or award between them and we will treat Long and Foster—nominally—as a non-party.

2. In circuit court the jury found that Long and Foster engaged in unfair competition and awarded Weichert $375,000.00, as a result.

After trial, both parties petitioned for attorney's fees and expenses under the Fee Provision of the Agreement. Faust sought attorney fees and expenses of $1,485,500.43, and Weichert sought fees and expenses totaling $2,203,037.65. The court denied Weichert's petition but granted Faust's petition, awarding her $946,014.50 in attorney's fees.[3]

## DISCUSSION

Weichert first argues that the trial court erred when it granted Faust's—and, consequently, denied Weichert's—petition for attorney's fees on the common ground that Faust "prevailed" according to the terms of the Fee Provision. Weichert next argues that the trial court erred in its award because Faust did not "incur" the fees and expenses awarded, and because she breached her employment contract. Finally, Weichert argues that the court's fee award was not reasonable and not supported by the evidence.

The Court of Appeals recently summarized the proper review of a contract providing for attorney's fees:

Contract clauses that provide for the award of attorney's fees generally are valid and enforceable in Maryland, subject to a trial court's examination of the prevailing party's fee request for reasonableness. *Myers v. Kayhoe*, 391 Md. 188, 207, 892 A.2d 520 (2006). The interpretation of a written contract is a question of law for the court subject to *de novo* review. *Diamond Point v. Wells Fargo*, 400 Md. 718, 751, 929 A.2d 932 (2007). Maryland applies an objective interpretation of contracts. *Id.* If a contract is unambiguous, the court must give effect to its plain meaning and not contemplate what the parties may have subjectively intended by certain terms at the time of formation. *Id.* at 751, 929 A.2d 932. A contract is ambiguous if, when read by

---

3. Weichert filed two separate appeals, the first (No. 2255) challenging the trial court's October 23, 2008, ruling on the merits, and the second (No. 2846) challenging the amount awarded in the judgment, entered January 27, 2009. These appeals were consolidated by order of this Court on June 9, 2009.

a reasonably prudent person, it is susceptible of more than one meaning. *Id.* In interpreting a contract provision, we look to the entire language of the agreement, not merely a portion thereof. *Jones v. Hubbard,* 356 Md. 513, 534–35, 740 A.2d 1004 (1999). When interpreting a contract's terms, we consider "the customary, ordinary and accepted meaning of the language used." *Atlantic v. Ulico,* 380 Md. 285, 301, 844 A.2d 460 (2003).

*Nova Research, Inc. v. Penske Truck Leasing Co., L.P.,* 405 Md. 435, 447–48, 952 A.2d 275 (2008).

## A. The Meaning of "Rights Hereunder"

Weichert argues that Faust did not "prevail" under the Fee Provision because Weichert obtained a verdict on its claim for breach of the duty of loyalty. Weichert argues that the plain meaning of the word "hereunder," as contained in the Fee Provision, extends beyond Paragraph 22 and encompasses all rights and duties under the contract, including the duty of loyalty that Faust breached. Faust argues that the duty of loyalty is not one of the "rights hereunder" described in the Fee Provision, and that she is entitled to a fee award because she "prevailed" on the fundamental claim for breach of contract.

When we interpret a contract, we must examine the contract as a whole, in order to determine the intention of the parties. *Janusz v. Gilliam,* 404 Md. 524, 540, 947 A.2d 560 (2008) (citing *Moscarillo v. Professional Risk Management Services, Inc.,* 398 Md. 529, 540, 921 A.2d 245 (2007)). Weichert relies upon the plain meaning of "hereunder," which is, generally, "in accordance with this document." *See* MERRIAM–WEBSTER ONLINE DICTIONARY, available at http://www.m-w.com/dictionary/hereunder (defining "hereunder" as "under or in accordance with this writing or document") (last visited January 14, 2010). We disagree with Weichert's argument because, when read in conjunction with the rest of the Agreement, the meaning of "hereunder" narrows to the provisions of a single paragraph in the Manager's Addendum.

Paragraph 22 is similar to the contract term we interpreted in *Burdette v. Lascola,* 40 Md.App. 720, 395 A.2d 169 (1978), where the last sentence of the parties' arbitration provision read: "Should either party hereto bring suit in court to enforce the terms hereof, it is agreed that the losing party shall pay to the successful party his costs and reasonable attorney's fees." *Id.* at 735, 395 A.2d 169. We held that "terms hereof" referred to "the provisions of that paragraph which only relate to the agreement to arbitrate." *Id.* at 735–36, 395 A.2d 169. This is similar to the position advocated by Faust's petition for fees, which argument the trial court adopted and quoted:

> The [Manager's Addendum] consists of 22 paragraphs. Only one paragraph of the Agreement—paragraph (22)—is broken into subsections. Paragraph "22" sets forth the non-solicitation clause, and in 8 separate clauses lettered (A) through (H) establishes the parties' rights and obligations under the non-solicitation clause, as well as the mechanism for enforcement of the non-solicitation obligation. In various subsections of paragraph (22), the agreement makes clear that only disputes concerning a non-solicitation clause are enforceable by any legal means, including injunctive relief, and that involvement by a court of competent jurisdiction is contemplated in enforcement of the non-solicitation clause.... No other section of the agreement refers to attorney's fees. Just as subsection (22)(A) through (22)(G) all relate to the non-solicitation clause, it follows [that] subsection (22)(h) of paragraph (22) ... relates exclusively to the non-solicitation clause and entitles the prevailing party to attorney's fees only in a suit based on paragraph (22).

We agree with both Faust and the trial court. The structure of the contract indicates that the word "hereunder" refers only to the provisions of that paragraph numbered 22. Our result may have been different if the Fee Provision were its own paragraph, but here it is merely an appurtenance to Paragraph 22.

Having narrowed the scope of the fee provision to the non-solicitation agreement in Paragraph 22, we must address Weichert's alternative argument that Paragraph 22 included the duty of loyalty. In fact, the opposite is true: the duty of loyalty includes Paragraph 22. This is a crucial difference and means that the breach of one does not necessarily imply the breach of the other.

Every Maryland employment contract gives rise to the duty of loyalty. *See Maryland Metals, Inc. v. Metzner*, 282 Md. 31, 38, 382 A.2d 564 (1978) ("we have read into every contract of employment an implied duty that an employee act solely for the benefit of his employer in all matters within the scope of employment"). Here, Weichert argues that because Faust breached the duty of loyalty, she necessarily breached the non-solicitation agreement of Paragraph 22. Though it is true that a breach of Paragraph 22's non-solicitation provision would generally be a breach of the duty of loyalty, solicitation is not the *only* way that the duty of loyalty can be breached. Add to this the fact that the jury specifically found that Faust did *not* breach her employment contract, and the only remaining logical conclusion is that the duty of loyalty *must* have been breached in some manner *other* than solicitation in contravention of Paragraph 22.[4]

Weichert also cites to *Stratakos v. Parcells*, 172 Md.App. 464, 915 A.2d 1022 (2007), in which we held that a party could recover attorney's fees on claims of misrepresentation because

---

4. The court instructed the jury on three grounds for breach of the duty of loyalty:

> If you find that, during her employment with Weichert, Faust performed services on behalf of Long and Foster beyond merely preparing to compete in the future following the termination of her employment with Weichert, that she solicited Weichert personnel during her employment with Weichert to leave their employment with Weichert and join Long and Foster, or otherwise engaged in fraudulent, unfair[,] or wrongful conduct that went beyond preparing for future employment with Long and Foster and such actions by Faust proximately caused harm to Weichert, then you must find for Weichert.

As discussed above, the jury must have found that Faust breached the duty of loyalty by either the first or the last means.

they arose out of the contract. However, the contractual language in *Stratakos*, "arising out of," was much broader than the word "hereunder" in the Fee Agreement. We held that "the words 'arising out of' require a showing of a causal relationship." *Id.* at 472, 915 A.2d 1022 (citing *CSX Transp., Inc. v. Mass Transit Admin.*, 111 Md.App. 634, 683 A.2d 1127 (1996), *aff'd*, 349 Md. 299, 708 A.2d 298 (1998)). Therefore, while the phrase "arising out of" could, hypothetically, include common law duties, the parties' Fee Agreement did not.

Turning to the trial court's construction, the only claim brought pursuant to Paragraph 22 was Weichert's claim for breach of contract, which it lost. The only claim upon which Weichert prevailed was for breach of the duty of loyalty, which, as we have shown, was not occasioned by a breach of Paragraph 22.[5] Therefore, the trial court did not err in its finding that Faust "prevailed" according to the terms of the parties' Agreement and that she was entitled to reasonable attorney's fees and costs, while Weichert did not and was not.

## B. The Meaning of "Incurred"

■ Weichert next argues that Faust did not "incur" fees and so is not entitled to recover them by operation of the Fee Provision.[6] We begin by revisiting the text of the Fee Provision:

----

**5.** Weichert argues that the duty of loyalty is incorporated in Paragraph 22, where it states: "Notwithstanding any dispute involving the provisions of this paragraph, [Faust] shall comply with all the provision of the AGREEMENT and an injunction may be entered to enforce the same."

The plain language of this sentence does not incorporate the entire Agreement into Paragraph 22. Even if we were inclined to adopt Weichert's interpretation, this sentence contemplates the particular situation in which the parties actively dispute whether Faust is in breach of the particular terms of Paragraph 22 but have not terminated the Agreement, in which case Faust's other duties continue. Thus, in order to breach this term, there must have been an active dispute over Paragraph 22 when Faust breached the duty of loyalty. Such was not the case.

**6.** Weichert also argues that the court should not follow the reasoning in cases applying the collateral source rule, citing *Dennison v. Head*

H. If [Weichert] brings any action(s) (including an action seeking injunctive relief) to enforce its rights hereunder and a judgment is entered in [Weichert]'s favor, then [Faust] shall reimburse [Weichert] for the amount of [Weichert]'s attorney fees incurred in pursuing and obtaining the judgment. If [Faust] prevails in such a suit, then [Weichert] shall reimburse [Faust] for the amount of [Faust]'s fees incurred in same.

Weichert contends that because Faust's new employer, Long and Foster, agreed to indemnify her litigation costs, and because there is no evidence that she is required to repay those fees, that Faust did not "incur" the fees. This ignores a crucial aspect of the wording: the Fee Provision refers to Weichert's or Faust's "fees incurred," but it does not specify *by whom* they must be incurred.[7]

This case is governed by the Court of Appeals' decision in *Dutta v. State Farm Ins. Co.*, 363 Md. 540, 769 A.2d 948 (2001), where the Court held that an insured was entitled to reimbursement under his automobile insurance policy, even though his health maintenance organization ("HMO") had initially paid his medical bill and had already been reimbursed by the third-party tortfeasor. In order to decide that case, the Court had to interpret the meaning of "incurred" as it appeared in the parties' insurance agreement and in Maryland Code (1995, 1997 Repl.Vol.), Title 19, subtitle 5 of the Insurance Article ("IA"). The insurance agreement provided coverage for "[r]easonable charges incurred within three years after the date of the accident," *Dutta*, 363 Md. at 556, 769 A.2d 948, while the statute required coverage of "reasonable and necessary expenses that arise from a motor vehicle accident and that are incurred within 3 years after the accident." IA § 19–

*Constr. Co.*, 54 Md.App. 310, 458 A.2d 868 (1983), where we held that the collateral source rule does not apply to contract cases. Our decision does not reach this issue.

7. We note that the contract employs the possessive, but this indicates only whom the claims must be brought for or against, not who must incur the fees, in order for them to be awarded.

505. As in this case, neither sentence specifically stated who must incur the expenses in question. The Court thus had to decide the plain meaning of "incurred," in that context. *Id.* at 557–58, 769 A.2d 948.

To resolve the plain meaning of "incurred," the *Dutta* Court cited to other jurisdictions that had addressed the issue and had included collateral sources in the plain meaning of "incurred." In particular, the *Dutta* opinion relied on *Kopp v. Home Mutual Insurance Company*, 6 Wis.2d 53, 94 N.W.2d 224 (1959), where the question was whether an insured was entitled to personal injury protection claims from his automobile insurer that had already been paid by his health insurer. The *Dutta* opinion quoted *Kopp* to the effect that:

It is clear from the undisputed facts that no such debt was incurred by the plaintiff to pay for such hospitalization. However, a debt was incurred on the part of Blue Cross to pay such expense to Luther Hospital, and the plaintiff had paid quarterly premiums to Blue Cross as consideration for Blue Cross undertaking so to do. Thus expense was incurred for hospital services furnished 'to or for' the plaintiff insured.

. . . .

However, where the injured person (in this case the insured) pays a consideration to have the expense of such medical or hospital services paid without liability to such injured person, it is our considered judgment that the injured person should be permitted to recover such expense under the policy clause in question.

*Kopp*, 6 Wis.2d at 56–58, 94 N.W.2d 224.

The *Dutta* Court concluded that "an expense was incurred on the petitioner's behalf," and that the insurer was therefore liable to the insured. 363 Md. at 561, 769 A.2d 948. Here, just as an insured would pay a premium to its insurer, Faust provided consideration for her indemnification through the net benefits of her services to her new employer. *See Dutta*, 363 Md. at 560–61, 769 A.2d 948 (*citing State Farm v. Fuller*, 232 Ark. 329, 333, 336 S.W.2d 60, 63 (1960) (holding that "the

federal government, in effect, 'incurred' the hospital costs of [Mrs. Fuller] in consideration for her services in the armed forces")).

The *Dutta* decision also addresses Weichert's argument that we should not consider Faust's fees "incurred" because there is no evidence that Faust must surrender her fee award to Long and Foster. In *Dutta,* even though the medical insurer had already recovered its outlay and the insured would "pocket" the claim award, the court held that the insured was entitled to recovery. Faust thus stands in precisely the same position as the insured in *Dutta,* who was held to have "incurred" expenses.

For the foregoing reasons, we hold that Faust's fees and expenses were "incurred" pursuant to the terms of the parties' Agreement.

## C. Breach

Weichert also argues that Faust should be denied the benefits of the Fee Provision because she materially breached the Agreement. Weichert argues that Faust's breach of the duty of loyalty excuses its performance under the Fee Provision, so that the petition should have been denied.

In order for Weichert's performance under the Fee Provision to be excused, loyalty must be a condition precedent. Weichert cites our opinion in *Chai Management, Inc. v. Leibowitz,* 50 Md.App. 504, 439 A.2d 34 (1982), which answered the "narrow" question: "Whether an employer who fires an employee for cause (upon a material breach of contract) must be required to pay the employee for the notice period designated by the employment contract?" *Id.* at 505, 439 A.2d 34. We held that the employer was not so required. However, the facts of *Chai* distinguish it from this case.

In *Chai,* we presumed—for purposes of review—that the employee had "wilfully disobeyed his employer's explicit command to obtain immediately more toilet paper." *Id.* at 506, 439 A.2d 34. We noted that, under the employee's theory of the case, it was "as if the employee has breached the provision

that requires him to go to work and then sues under the provision which specifies his salary." Although not stated precisely, the implication of *Chai* is that material compliance with the terms of a contract is a condition precedent to notice of termination. *See id.* at 514, 439 A.2d 34 ("we can neither find nor imagine an interpretation of such a notice provision that would require a non-breaching employer to give an employee, who blatantly breaches his employment contract, the notice specified in the contract").

We cannot extend the logic of *Chai* to this case because a narrowly-drawn fee-shifting provision is of a different kind compared to provisions for notice of termination or, as supposed by the *Chai* court, for salary payments. The Fee Provision appears to contemplate—and Weichert's petition for fees confirms—that the court could award opposite and simultaneous fee awards, predicated on mutual breach of contract. Even if this were not so, the Agreement limits fee-shifting to breaches of Paragraph 22, which addresses only non-solicitation. It would be inconsistent to hold that attorney's fees and expenses expressly conditioned upon successfully defending a breach of Paragraph 22 should be denied in a case where Faust specifically did *not* breach the terms of said paragraph, even though she may have violated some other provision of the Agreement. For these reasons, we hold that Faust's breach of the duty of loyalty did not forfeit her contractual right to attorney's fees and costs.

### D. Reasonable Fees and Expenses

Weichert next argues that the court erred when it awarded Faust attorney's fees of $946,014.50. Weichert argues that the court erred when it applied the "common core of facts" doctrine to determine the amount of Faust's fee award, while Faust contends that the doctrine comports with Maryland law.[8] Weichert further argues that even if the trial court was

---

8. Faust also argues that Weichert is estopped from making this argument because Weichert's petition invoked the "common core of facts" doctrine when it stated:

legally correct, Faust did not meet its burden and the facts did not support the award amount.

Maryland follows the common law "American Rule" that the prevailing party is not usually entitled to recover attorney's fees as an element of damages or costs, but that they may agree to that effect. *Thomas v. Gladstone*, 386 Md. 693, 699, 874 A.2d 434 (2005). In Maryland, the party requesting attorney's fees has the burden of providing the court with the necessary information to determine the reasonableness of its request. *Myers v. Kayhoe*, 391 Md. 188, 207, 892 A.2d 520 (2006) (citing *Atlantic v. Ulico*, 380 Md. 285, 316, 844 A.2d 460, (2004)). A trial court's determination of the reasonableness of attorney's fees is discretionary and will not be overturned unless clearly erroneous. *Id.*

## A. The "Common Core of Facts" Doctrine

Faust argues that the trial court properly applied the "common core of facts" doctrine, which the United States Supreme Court established in *Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983):

> It may well be that cases involving such unrelated claims are unlikely to arise with great frequency.... In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot

---

[Weichert]'s other claims against [Faust] ... were claims arising from a common core of facts and representing alternate legal theories for recovery. Therefore, all of these claims ... should be regarded are [sic] so interrelated that they must be treated as one for purposes of awarding reasonable attorney's fees.

We recognize the validity of Faust's argument. *See Eagan v. Calhoun*, 347 Md. 72, 88, 698 A.2d 1097 (1997) ("Generally speaking, a party will not be permitted to maintain inconsistent positions ...") (citing 28 AM.JUR 2D *Estoppel and Waiver* § 68, at 694–95 (1966)). We also note that Weichert appears to have abandoned this specific argument. However, Weichert's argument that the trial court erred in determining reasonable attorney's fees was sufficiently broad to preserve this issue.

be viewed as a series of discrete claims.  Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

Faust argues that Maryland Law recognizes a similar doctrine, pointing to our opinion in *Reisterstown Plaza Assoc. v. General Nutrition Center, Inc.,* 89 Md.App. 232, 597 A.2d 1049 (1991), where we cited with approval cases from other jurisdictions holding that "a party may recover attorney fees rendered in connection with all claims if they arise out of the same transaction and are so interrelated that their prosecution or defense entails proof or denial of essentially the same facts."  *Id.* at 245, 597 A.2d 1049 (citations and internal quotation marks omitted).

The Court of Appeals has not specifically invoked the words "common core of facts," but it recently espoused the general idea in *Diamond Point Plaza L.P. v. Wells Fargo Bank, N.A.,* 400 Md. 718, 761, 929 A.2d 932 (2007):

In drafting pleadings, motions, discovery, or memoranda that concern multiple claims, possibly against different defendants, it may not always be possible to make a precise allocation of time or expenses among those claims.  A deposition, a telephone conversation, settlement negotiations, a court proceeding may involve several claims and several defendants.  It is not reasonable to expect the lawyer to have in tow an industrial engineer with a stop watch to measure how much time was devoted to one claim or another.  Moreover, as [Maryland Rule of Professional Conduct] 1.5 makes clear, time spent is not the only factor in determining reasonableness.

This opinion addresses two concerns that are both resolved by the "common core of facts" doctrine.

First, deciding the amount of fees and expenses raises what we might call "philosophical" problems.  A court's reasonable fee award rests on the facts before it, namely, the amount of fees and expenses, and an agreement that amalgamates and shifts those costs should one party prevail on a predetermined

claim. But what we commonly conceive of "cost" is not always an exact property of a particular claim. Rather, cost is contextual, and it can sometimes escape definition, particularly in hindsight.

For example, assume an injured plaintiff is considering suit against joint tortfeasors. If he brings claim A against party A, the total cost of litigation may rise from $0 to, for example, $100,000.00. The cost of claim A would, in that case, be $100,000.00. Having settled on theory A, the plaintiff may choose to add an identical claim, B, against the second joint tort-feasor. Because claims A and B have many similarities and share common facts and law, the lawyer will be able to economize on their common aspects and the total cost of the suit would rise to only $150,000.00, so that the "cost" of claim B would be the additional $50,000.00 it takes to litigate. However, B is a claim *identical* to claim A, and we know that it would have cost $100,000.00 when brought alone. Therefore, whether we consider the cost of either claim to be $50,000.00 or $100,000.00 depends on our ability to label one as some sort of "original" claim and the other as supplementary. But this retrospective label is arbitrary if the claims were brought simultaneously, as they were here and are in many cases.[9]

This problem arises at a fundamental level because certain costs are necessary to litigate each claim successfully and yet do not change as the number of claims increases.[10] For example, an attorney could ask a single deposition question whose answer is relevant to multiple claims. If only one claim gives rise to fees, should the party be able to recover fees for the time spent preparing and asking the question? It would seem so, but should they recover the fee in whole or in part?

---

**9.** Even if the claims were not brought simultaneously, we can conceive of no rational way to determine which claim should be considered to have come "first" or otherwise be the "primary" claim.

**10.** For the purposes of our present discussion we will call any cost that is common to multiple claims "fixed," even though our analysis has not strictly limited the number of claims and their attendant costs.

If in part, what part? Do we simply divide by the total number of claims, or do we use some ratio based on the proportion of recovery for each claim? These questions are rhetorical. The point of this discussion is that the allocation of fixed or shared costs cannot be determined from our common notions of causation or necessity. The exact material and objective "cost" that the mind and the law seek simply is not there.[11]

Thus, in order to obtain a definite value of "cost," a court necessarily *assigns* one. In the hypothetical case of a single question relevant to multiple claims, it is clear that a party prevailing on one but not all claims should receive some compensation, and it is within reason to assign the question's cost to the single claim that merits a fee award. While this may appear to be a windfall to the fee recipient, it is only so in hindsight. If the claim had been brought alone, the prevailing litigant would have incurred its necessary costs and the court could do nothing but award the expense as a whole. We can see no reason why the prevailing litigant should necessarily be denied this amount merely because the expense was related to other claims.[12]

We have therefore established that a court could reasonably assign to a single fee-shifting claim any cost that would have been necessary to litigate the claim as if it had been brought alone. However, the "common core of facts" doctrine is somewhat broader than that. If the court finds that two claims are factually related, the doctrine not only awards the costs common to all claims, but also awards costs that arise solely by virtue of the *non*-fee-shifting claim. This case is one example. Only Weichert's claim for breach of contract gave

---

11. Whether there exists some "ideal" assignment of cost—perhaps a weighted sum of what the claim would cost in all possible universes— we could only speculate. Our concern is only to find a reasonable one.

12. Furthermore, the "common core of facts" doctrine comports with our basic notions of fairness in that the losing party should foresee that a fee-shifting claim could be brought alone. In that case, there would be no argument that the fees should be "diluted" because the expense is necessary to other claims.

rise to attorney's fees. Because this claim shared a factual element with extra-contractual claims, the "common core of facts" doctrine then shifted the cost of developing facts that were not relevant to the contractual claim. These costs would not have been incurred if only the fee-shifting claim had been brought, and so the "core of common facts" doctrine would seem to contradict our foregoing logic in this regard.

It is at this point, in attempting to sift through fees in order to divvy them up according to facts and claims, that we encounter the second problem from *Diamond Point*, which is the problem of measurement. Specifically, it is not always efficient or reasonable to label each iota of time with the particular claim and fact it addresses. This is what gives rise to what is commonly known as "block billing," in which billable tasks that could be considered in some sense separate are combined for billing purposes. In these cases, Maryland courts have awarded the known total—though amalgamated—fee.[13] *See Diamond Point*, 400 Md. at 761, 929 A.2d 932; *Royal Inv. Group, LLC v. Wang*, 183 Md.App. 406, 459, 961 A.2d 665 (2008). Therefore, the "core of common facts" doctrine addresses both of the primary fee award concerns expressed in Maryland case law.[14]

Certain circumstances could make another method more reasonable, but we leave that to the discretion of the trial

---

13. We do not wish to belabor the point of cost allocation, but we note that this comports with our foregoing analysis. If we consider the difference between the amount actually awarded and what would have been awarded if the timekeeping had been ideally accounted, we can rightly consider that amount an inherent cost of litigation. That cost being necessary to litigate a fee-shifting claim successfully, it is subject to our analysis, above, and therefore its inclusion in the total fee award is logically sound.

14. We are aware that block billing may tempt the unscrupulous attorney to intentionally obfuscate his or her timekeeping. However, we are confident that among the attorney's own client, the discovery process, the court's discretion to discount fee awards, and—in some cases—the prospect of recovering fees, there are sufficient incentives not to cheat in this manner.

court. In light of the foregoing discussion, we hold that the "common core of facts" doctrine comports with Maryland Law.

## B. Applying the "Common Core of Facts" Doctrine

■ Having so held, we must address whether the trial court properly applied the "common core of facts" doctrine to this case. To do so, we need look no further than Weichert's original complaint, where we see that all of Weichert's claims alleged that Faust had solicited Weichert's employees to defect.[15] Thus, disproving that fact was a necessary defense to each claim, and it formed the common factual core of the court's fee award.

Faust provided a good deal of evidence, including her actual bills and their corresponding descriptions of services, as well as a lengthy exhibit of itemized fees. Faust also provided "breakdowns" of time by category and month, with summaries of events during those time frames. This evidence gave Weichert sufficient information and opportunity to defend Faust's fee claims,[16] and the trial court dedicated nearly thirty pages of its "Memorandum Attorneys' Fee Opinion" to analyzing the evidence in painstaking detail. The trial court's review here was equal to that upheld in *Wang*, 183 Md.App. at 459, 961 A.2d 665:

> Here, the trial court, after reviewing the bills and hearing testimony, concluded that the bills provided sufficient detail:
>
>> The Court has reviewed the numerous time sheet entries and finds that the overwhelming majority of them provide sufficient detail. . . . The Court further finds it was rea-

---

**15.** All four of Weichert's claims included this factual element, but Faust sought fee recovery for only three of them.

**16.** Weichert argues that it was not afforded adequate discovery because the trial court invited Faust to designate her own counsel as an expert during his testimony at the evidentiary hearing on attorney's fees. Weichert cites no law on this point and its only argument on the record is that the court had previously requested that the parties designate their experts prior to the hearing. Without more, we are not persuaded that Weichert was prejudiced by a suggestion the trial court made to expedite the proceedings.

sonable in almost all incidents to list multiple tasks together as a single charge. Generally, the tasks on their face appear substantially related. Additionally, in some instances, the additional tasks were so minor as to almost certainly represent only a small fraction of the time being charged. Accordingly, the Court finds that in general the Defendant has provided sufficient information to reach its burden of proof.

The trial court, in a lengthy, detailed, written opinion, discussed the hours reasonably expended by Mr. Wang's counsel. The court made several adjustments lowering the award below Mr. Wang's initial request of $350,000. We find no abuse of discretion in the award of attorney's fees to Mr. Wang.

Here, as in *Wang*, the evidence was voluminous and the court's review lengthy. It is clear that the court painstakingly reviewed the evidence before it and reduced the award based on Weichert's objections to certain items and the reasonable rate established by Weichert's expert.[17]

Faust provided sufficient evidence of her attorney's fees and expenses and the record shows that the trial court carefully considered it in light of the "common core of facts" doctrine to determine a reasonable amount. Therefore, we cannot say that the court abused its discretion, and we affirm the award.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

---

**17.** As previously noted, Faust's total attorney's fees and expenses sought were $1,485,500.43.