REPORTED

IN THE COURT OF SPECIAL APPEALS
OF MARYLAND

No. 1118

September Term, 2012

STEVEN J. OCHSE, ET UX.

v.

WILLIAM O. HENRY, ET UX.

Matricciani,
Graeff,
Moylan, Charles E., Jr.
 (Retired, Specially Assigned),

JJ.*

Opinion by Moylan, J.

Filed: February 25, 2014

*Kehoe, J., did not participate in the Court's decision
to designate this opinion for publication pursuant to
Maryland Rule 8-605.1.

This appeal is the latest chapter in a long running battle between the appellants, Steven J. Ochse and Shari Ochse ("the Ochses"), and their neighbors, the appellees, William O. Henry and Jessie Henry ("the Henrys"), over title to residential real property the Ochses purchased from the Henrys on December 14, 2001. The dispute concerned a 30-foot wide strip of land traversing the property that, unbeknownst to the parties at the time of the Ochses' purchase, had been conveyed to Dorchester County by a previous owner in 1919 for a county road that was never built. The Ochses filed a four-count complaint against the Henrys in the Circuit Court for Dorchester County on December 11, 2007, later adding Dorchester County as a defendant, seeking reformation of the deed, declaratory relief, injunctive relief, and damages for breach of contract, breach of special warranties, and fraud in the inducement. The Henrys filed a counterclaim seeking an award of attorney's fees pursuant to a provision of the contract of sale that specifically survived merger with the deed.

On August 4, 2008, the circuit court ruled on cross-motions for summary judgment, declaring that Dorchester County owned the 30-foot wide strip of land in fee simple. After a bench trial, the court also found that the contract of sale merged into the deed and that there was no breach of special warranties of title. Pursuant to the fee-shifting provision that survived merger with the deed, the court entered an award in favor of the Henrys and against the Ochses in the amount of $100,020.00. The court denied all other relief.

The Ochses appealed to this Court. As a result of Court-ordered mediation, Dorchester County executed a quitclaim deed granting its interest in the 30-foot wide strip

of land to the Ochses and was dismissed from the case.  On December 21, 2011, this Court issued a reported opinion, Ochse v. Henry, 202 Md. App. 521, 33 A.3d 480 (2011), cert. denied, 425 Md. 396, 41 A.3d 571 (2012), reversing the circuit court's grant of summary judgment and vacating the award of attorney's fees in favor of the Henrys.  We remanded for the circuit court to reconsider its award of attorney's fees because, as a result of our holding that the Henrys had breached their contractual duty to convey marketable title to the Ochses, the Ochses became the prevailing party entitled to a fee award.

On remand, without a hearing, the circuit court awarded $215,710.60 in fees against the Henrys and in favor of the Ochses.  This was substantially less than the $333,354.00 the Ochses had initially requested and the $355,731.78 the Ochses requested in a supplemental motion.  The Ochses have now appealed from the court's fee award in their favor.  We find no abuse of discretion in the court's approach, but we shall vacate the award and remand for reconsideration in light of the Ochses' April 27, 2012 supplemental motion for fees, which the circuit court appears to have overlooked.

## Facts and Proceedings

Before we address the circuit court's decision on remand, we must first examine our reported opinion that ordered the remand.[1]  The Ochses did not achieve a landslide victory. On the contrary, we affirmed the circuit court on all but one legal issue.  We held that the

---

[1]As the facts of the parties' underlying dispute were fully set forth in our earlier opinion, we shall not recount them here.

Henrys did not breach a special covenant against encumbrances, 202 Md. App. at 532, 33 A.3d at 487, and that the Henrys did not breach a covenant of special warranty of title, id. at 535, 33 A.3d at 489. In order to sue on the contract of sale, which would ordinarily merge with the deed, the Ochses had to show either fraud or mistake. Although the Ochses claimed that evidence of the Henrys' material misrepresentations was "overwhelming and consistent," we affirmed as not clearly erroneous the circuit court's factual finding

> that the Henrys did not fraudulently induce the Ochses to purchase the property because, though Mr. Henry knew that the area had been used as a road, he honestly believed that it was merely an old dirt road and had no reason to suspect that Dorchester County owned a segment of the property.

Id. at 541, 33 A.3d at 492. We also rejected the Ochses' claim that the Henrys had been willfully blind to the possibility of a county road over the property. Id. at 542, 33 A.3d at 492.

We reversed only on the issue of mutual mistake of fact, an issue that had been so peripheral at trial that we felt it necessary to first address whether it had been preserved for our review. Id. at 542, 33 A.3d at 492-93. Although we decided this issue in favor of the Ochses, we also explained that it was, for purposes of resolving title to the property, moot.

> The factual scenario in this case could not have occurred in the absence of fraud or mutual mistake. If the Henrys knew that there was a road across the property and did not disclose this to the Ochses, there was fraud. If neither party was aware of the road across the property, there was mutual mistake of material fact. Because the circuit court found the absence of fraud, there must have been mutual mistake. Accordingly, the contract of sale did not merge into the deed, and the Ochses should have been able to sue on the contract. Nevertheless, as a result of the mediation this Court ordered, the Ochses received Dorchester County's interest in the 30-foot wide strip across the

> Ochses' parcel. <u>The issue of title is thus resolved because the Ochses now
> own the entirety of the 4.791 acre parcel in fee simple absolute.</u>

<u>Id.</u> at 543, 33 A.3d at 493 (emphasis supplied).

For all practical purposes, the Ochses had been made whole and no longer had any claim of injury as of the time Dorchester County conveyed to them its interest in the driveway. From that point on, the Ochses possessed un-clouded fee simple title to the entire property. Success on the breach of contract claim against the Henrys – indeed, success on any aspect of the post-mediation appeal – was purely academic in all respects but one: it meant that the Ochses would qualify as the "prevailing party" and be entitled to an award of attorney's fees pursuant to the fee-shifting provision in the contract of sale.

As the circuit court had determined that the Henrys were the prevailing party and entered a fee award in their favor, we vacated that award and remanded for reconsideration. We explained:

> In light of our holdings above, we conclude that the circuit court was acting within the terms of the contract and deed by awarding attorney's fees. Regardless of whether the contract merged with the deed, the attorney's fees provision of the contract survived. The apportionment of attorney's fees, however, was in error. While the Henrys did not breach the special covenants because the defect in title was created by their predecessors in title, the Henrys had a duty to convey marketable title to the 4.791 acres in the contract, which survives merger with the deed on the basis of mutual mistake. The Ochses now own the 4.791 acre parcel in fee simple, but at the time of the conveyance, the Henrys did not convey marketable title to the Ochses, breaching the contract. As such, we shall vacate the circuit court's determination of attorney's fees and remand for that court to reconsider its award of attorney's fees in light of this opinion.

Id. at 544, 33 A.3d at 494.  In response to a motion for reconsideration, we further explained:

> [O]ur previously filed opinion in this matter has been clarified to indicate that the Ochses are able to sue on the underlying contract based on mutual mistake or misrepresentation, avoiding merger of the contract with the deed.  Because the contract contained an attorney's fees provision, the Ochses are entitled to attorney's fees.  While title issues have been resolved, the circuit court must view the case as it appeared when initiated.

Id. at 526 n.2, 33 A.3d at 483 n.2.

On remand, the Ochses filed a motion requesting a fee award on January 24, 2012.  They sought a total of $333,354.00 and provided itemized billing records.  They specified that, of that total, $176,525.37 was incurred "up to the time of trial."  This was similar to the fees incurred by both of the defendants through the trial, $174,143.20.

On April 23, 2012, the Court of Appeals denied the Henrys' petition for a writ of certiorari to review our decision in the first appeal, as well as the Ochses' conditional cross-petition.  On April 27, 2012, the Ochses filed a supplemental motion for fees that reflected the additional costs incurred in relation to the certiorari petition.  The supplemental motion requested a revised total of $355,731.78.

On July 12, 2012, the circuit court ruled without a hearing[2] and explained its $215,710.60 award in a six-page opinion. Although the court confused our holding regarding breach of a special warranty against encumbrances with our holding regarding breach of contract and mutual mistake of fact, the court correctly noted that we "upheld [its] findings as to all counts except Count III."[3] The court recognized the Ochses' new status as the prevailing party and acknowledged our direction "to 'view the case as it appeared when initiated' and to disregard the subsequent resolution of title issues resulting from the court-ordered mediation."

The court followed our direction in Congressional Hotel Corp. v. Mervis Diamond Corp., 200 Md. App. 489, 499-500, 28 A.3d 75, 81-82 (2011) (citing Monmouth Meadows

---

[2]Neither party requested a hearing on remand. After the court scheduled a hearing, sua sponte, for August 1, 2012, the Ochses moved on May 30, 2012 to reschedule it. The court acknowledged this motion and viewed it as a motion to reschedule "or, in the alternative, to rule without a hearing, as one is not required by the rules nor requested by a party." The Ochses do not contend on appeal that the circuit court erred or abused its discretion by not holding a hearing on the motion for fees.

[3]In both their complaint and amended complaint, the Ochses had captioned count three as "Breach of Contract & Special Warranty with Injunctive Relief." They alleged:

> 30. The Defendants have breached the Contract of Sale with respect to the representations as to whether the "driveway" as depicted on the Plat is a right-of-way permitting others to cross the Ochse property and further, the Defendants have breached their special warranty of title provided to the Plaintiffs.

Although the Ochses were unable to sue on the contract of sale unless they first proved fraud or mutual mistake of fact, they pled fraud separately, as count four, "Fraud in the Inducement." The Ochses did not allege mutual mistake of fact at all in their complaint or amended complaint.

<u>Homeowners Ass'n v. Hamilton</u>, 416 Md. 325, 336-37, 7 A.3d 1, 7-8 (2010)), to consider

the eight factors specified in Maryland Lawyers' Rule of Professional Conduct 1.5. The court

also noted that it could consider "any other factor reasonably related to a fair award of

attorneys' fees." <u>Congressional Hotel</u>, 200 Md. App. at 500, 28 A.3d at 82 (quoting

<u>Monmouth Meadows</u>, 416 Md. at 337-38, 7 A.3d at 8). In the court's estimation, a critical

"other factor" was the limited nature of the Ochses' appellate victory on the merits, as well

as the limited relationship between this victory and the thrust of the Ochses' efforts at trial.

The court explained:

> The Court, unlike an appointed arbitrator, has been involved in the dispute between the Ochses and the Henrys throughout the pendency of this litigation. The substantial majority of the time and effort put forth by the Ochses' counsel during the pendency of the litigation in [the] trial court addressed Count IV, the claim against the Henrys for Fraud in the Inducement. In spite of the length of time spent litigating the fraud issue, this Court ultimately determined that there was a lack of any substantial evidence that the Henrys made fraudulent misrepresentations to the Ochses. It is a significant factor for this Court that the substantial majority of the time in trial and litigation effort put forth by Plaintiffs addressed the issue of willful fraud. After a careful review of the record of hearings, trial, and the Court's notes, this Court finds that only a small fraction of the effort expended towards litigation at the trial level focused on the issue of the breach of the special warranty against encumbrances.[4]

Because the Ochses had "prevail[ed] on some issues in [the] case but [did] not prevail

on other issues," the court decided that a "proportionate award" was appropriate. The court

---

[4]As we have noted, the circuit court confused our holding on the special warranty against encumbrances with our holding on mutual mistake of fact. As we also have noted, however, mutual mistake of fact was also a peripheral issue at trial.

distinguished this private contractual dispute from "civil rights and other statutory provisions which provide for fee-shifting to encourage certain forms of advocacy." The court believed that awarding the total fees the Ochses had requested would not be "appropriate or desirable" because

> [i]f the Court were to blindly award all expended attorneys' fees in a case when a party prevailed on <u>any</u> claim, such awards would serve as a financial incentive for attorneys to tack on and excessively litigate as many far-flung claims as possible, so long as they believed they could prevail on at least one claim in a case with a fee-shifting provision.

(Emphasis in original).

The court found a reasonable award to be "the entirety of the post-trial and appeal costs, as well as one-fourth of the attorney's fees expended in trial." Thus, from the Ochses' initial request of $333,354.00, the court deducted $114,731.40 (its calculation of three fourths of the attorney's fees through the trial), as well as $2,912.00 (which the court determined to be a double entry), to reach an award of $215,710.60. The court made no mention of the Ochses' April 27, 2012 supplemental motion for fees. On July 16, 2012, judgment was entered in favor of the Ochses and against the Henrys, jointly and severally, in the amount of $215,710.60.

## Discussion

On this appeal, the Ochses contend that the circuit court erred in reducing the award they requested to reflect the fact that they ultimately prevailed on only one of the four counts of their amended complaint, which count was not the primary focus of their time and effort

at trial. The Ochses maintain, relying on our opinion in <u>Weichert Co. of Md. v. Faust</u>, 191 Md. App. 1, 989 A.2d 1227 (2010), <u>aff'd on other grounds</u>, 419 Md. 306, 19 A.3d 393 (2011), that, instead of fashioning a proportionate award, the court should have viewed all of their claims as arising out of a common core of facts and granted the full amount they had requested. They argue that their unsuccessful efforts to prove fraud at trial were necessary to their ultimate success on their breach of contract claim and, in any event, all of their claims were based on the premise that the Henrys had breached the contract of sale by not conveying fee simple title to the whole property. The Ochses also contend that the circuit court failed to consider fees they incurred in mediating their appeal against Dorchester County and in successfully opposing the Henrys' petition for a writ of certiorari, as reflected in their supplemental motion for fees.

The Henrys contend that the circuit court properly awarded the Ochses the amount of fees that it deemed reasonable. The Henrys agree that the Ochses were successful in the litigation, insofar as they achieved their goal "of having the driveway become a 'dead end' for their use only." Nevertheless, the Henrys maintain that, ever since the 1919 deed was discovered and disclosed to the Ochses on March 28, 2008, litigation against them was futile as far as that practical objective was concerned because Dorchester County was the only party that "could fix the driveway problem." The Henrys point to at least $47,500 in claimed attorney's fees that, in their view, could be attributed strictly to the Ochses' fight against the County. The Henrys contend that the circuit court properly entered a "proportionate award"

because the "common core of facts" doctrine does not apply to contractual fee-shifting provisions concerning private disputes. They assert that the doctrine is limited to statutory fee-shifting provisions implicating some broader social policy, such as civil rights cases, where the doctrine provides "an added incentive to attorneys to take socially important cases that might otherwise be undesirable."

On remand from our December 21, 2011 decision, the circuit court had no discretion as to whether to grant an award or whether to grant an award to the Ochses as the prevailing party. Its only area of discretion was with regard to the amount of the award the Ochses would receive. Nevertheless, that discretion is wide. An award of attorney's fees will not be disturbed unless the court "exercised [its] discretion arbitrarily or [its] judgment was clearly wrong." Danziger v. Danziger, 208 Md. 469, 475, 118 A.2d 653, 656 (1955). See also Atlantic Contracting & Material Co., Inc. v. Ulico Cas. Co., 380 Md. 285, 316, 844 A.2d 460, 478 (2004).

The Court of Appeals has drawn a firm line between contractual fee-shifting cases, which arise out of a private agreement, and statutory fee-shifting cases, which involve some overriding public policy. Statutory fee awards generally make use of the lodestar approach, by which the court simply multiplies the time an attorney spent on a case by a reasonable hourly rate and then adjusts the result up or down to arrive at a reasonable award based on the circumstances of the case and after considering factors such as the twelve enumerated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974). See

<u>Friolo v. Frankel</u>, 373 Md. 501, 528-30, 819 A.2d 354, 370-71 (2003). Although statutory fee-shifting provisions "were not designed as a form of economic relief to improve the financial lot of attorneys, nor were they intended to replicate exactly the fee an attorney could earn through a private fee arrangement with his client," they are intended "to enable private parties to obtain legal help in seeking redress for injuries resulting from the actual or threatened violation of specific ... laws" by assuring an attorney "that he will be paid a 'reasonable fee.'" <u>Friolo</u>, 373 Md. at 526, 819 A.2d at 369 (quoting <u>Pennsylvania v. Delaware Valley Citizens' Council for Clean Air</u>, 478 U.S. 546, 565, 106 S. Ct. 3088, 3098, 92 L. Ed. 2d 439 (1986)). In other words, statutory fee-shifting provisions are designed to encourage attorneys to take on cases that might otherwise be financially undesirable but which serve some greater, legislatively-established, social purpose.

In contractual fee-shifting cases, the Court of Appeals has rejected the lodestar approach in favor of an approach based on Maryland Lawyers' Rule of Professional Conduct 1.5,[5] in part to discourage awards that bear no rational relationship to the work a case

---

[5]Rule 1.5(a) sets forth the following factors a court should consider:

     (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

     (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the lawyer;

     (3) the fee customarily charged in the locality for similar legal services;

(continued...)

- 11 -

reasonably requires of an attorney or the amount at issue in the litigation.

> [U]nlike the lodestar method, Rule 1.5 does not carry with it the notion that the importance of the right vindicated will justify an expenditure of attorney time that is hugely disproportionate to the dollar amount at issue in the case. Indeed, <u>when applying Rule 1.5, trial judges should consider the amount of the fee award in relation to the principal amount in litigation, and this may result in a downward adjustment.</u> Although fee awards may approach or even exceed the amount at issue, the relative size of the award is something to be evaluated.

<u>Monmouth Meadows Homeowners Ass'n v. Hamilton</u>, 416 Md. 325, 337, 7 A.3d 1, 8 (2010) (emphasis supplied). This Court has reiterated that, in determining reasonableness, a court should be guided by the factors set forth in Rule 1.5, but also "may consider, in its discretion, any other factor reasonably related to a fair award of attorneys' fees," and "<u>should consider the amount of the fee award in relation to the principal amount in litigation.</u>" <u>Congressional Hotel Corp. v. Mervis Diamond Corp.</u>, 200 Md. App. 489, 500, 28 A.3d 75, 82 (2011) (emphasis supplied).

Although the factors considered under the lodestar and Rule 1.5 approaches are

---

[5](...continued)

      (4) the amount involved and the results obtained;

      (5) the time limitations imposed by the client or by the circumstances;

      (6) the nature and length of the professional relationship with the client;

      (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

      (8) whether the fee is fixed or contingent.

similar, the underlying policy differences are clear. As we further explained in Congressional Hotel:

> A contractual fee-shifting provision is designed by the parties, not by the legislature. Such a provision is simply an agreement between private parties to pay the attorneys' fees and costs reasonably incurred in the course of litigation. Thus, it usually serves no larger public purpose than the interests of the parties. And, therefore, while an award of attorneys' fees and costs in a contractual fee-shifting case "may approach or even exceed the amount at issue," the "relative size of the award" takes on added significance in such a case because the contractual provision lacks the "public policy underpinnings" of a statutory fee-shifting provision.

200 Md. App. at 505, 28 A.3d at 84-85.

Above all, a court's duty in fashioning an award pursuant to a contract is to determine the reasonableness of a party's request. As the Court of Appeals explained in Myers v. Kayhoe:

> Contract provisions providing for awards of attorney's fees to the prevailing party in litigation under the contract generally are valid and enforceable in Maryland. Even in the absence of a contract term limiting recovery to reasonable fees, trial courts are required to read such a term into the contract and examine the prevailing party's fee request for reasonableness. The party requesting fees has the burden of providing the court with the necessary information to determine the reasonableness of its request. The trial court's determination of the reasonableness of attorney's fees is a factual determination within the sound discretion of the court, and will not be overturned unless clearly erroneous.

391 Md. 188, 207, 892 A.2d 520, 532 (2006) (emphasis supplied). "In order to apply Rule 1.5 to a fee award, a court does not need to evaluate each factor separately, and it need not necessarily hold an evidentiary hearing to determine an appropriate award." SunTrust Bank v. Goldman, 201 Md. App. 390, 402, 29 A.3d 724, 730 (2011). See also CR-RSC Tower

- 13 -

I, LLC v. RSC Tower I, LLC, 429 Md. 387, 465, 56 A.3d 170, 217 (2012).[6]

The Ochses' main contention is that the circuit court abused its discretion by granting a "proportionate award" instead of the full amount they requested. They maintain that they were entitled to the full amount, even though they failed on all but one of the claims they asserted, because all of their claims arose out of a common core of facts, and thus fees expended on successful and unsuccessful claims should have been combined rather than separated. We see no error or abuse of discretion in the circuit court's approach.

The "common core of facts" doctrine exists as a bridge that allows a court to award a fully compensatory fee where an attorney may not have prevailed on each and every claim or defense but still has achieved excellent results. See Friolo, 373 Md. at 522-25, 819 A.2d at 367-69 (discussing Hensley v. Eckerhart, 461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)). It solves the problem of courts not being able to compensate attorneys for fees that cannot easily be allocated between fee-shifting claims and factually or legally related non-fee-shifting claims. The doctrine removes the requirement of allocation and treats as one claims that are based on a common core of facts or related legal theories. In its purest form, it allows an award of not only those fees attributable to fee-shifting claims and fees common to fee-shifting and non-fee-shifting claims, but rather all fees attributable to fee-shifting and factually related non-fee-shifting claims. See Weichert, 191 Md. App. at 18, 989 A.2d at

---

[6]By order of October 17, 2013, the Court of Appeals established procedural rules for parties seeking awards of attorney's fees pursuant to statute or contract, which apply only to actions commenced on or after January 1, 2014. See Md. Rules 2-701 et seq.

1237 ("If the court finds that two claims are factually related, the doctrine not only awards the costs common to all claims, but also awards costs that arise solely by virtue of the non-fee-shifting claim.").

Although the common core of facts doctrine may be applied to both contractual and statutory fee-shifting,[7] in the court's discretion, it does not rule out the proportionate award the circuit court fashioned in this case. The doctrine is merely one part of one factor a court should consider (the results obtained) when determining the reasonableness of a fee award, as part of the totality of the circumstances, when a prevailing party prevails on less than all

---

[7] The Henrys devote a substantial portion of their brief to arguing that the common core of facts doctrine is limited to statutory fee-shifting cases, in large part because, they contend, it is inextricably intertwined with the lodestar method of calculating fees, which the Court of Appeals has expressly limited to statutory fee-shifting. See Monmouth Meadows, 416 Md. at 334-38, 7 A.3d at 6-8. The Henrys all but ignore the fact that Weichert, the only Maryland case to explicitly adopt the common core of facts doctrine, was a contractual fee-shifting case. Although one of the counterclaims in Weichert was brought pursuant to the Maryland Wage Payment and Collection Law, Md. Code (1991, 2008 Repl. Vol.), §§ 3-501 et seq. of the Labor & Employment Article, our discussion of the common core of facts doctrine dealt exclusively with a fee-shifting provision in a non-solicitation addendum to an employment contract between the parties. Although the defendant prevailed on her Wage Act counterclaim, her entitlement to attorney's fees was based solely on her successful defense against the plaintiff's breach of contract claim. See 191 Md. App. at 10, 989 A.2d at 1232. Diamond Point Plaza Ltd. P'ship v. Wells Fargo Bank, N.A., 400 Md. 718, 929 A.2d 932 (2007), which dealt with the problem of allocating fees among different claims or parties, involved two contractual fee-shifting provisions, one involving a mortgage and the other involving a lease. Similarly, Reisterstown Plaza Assocs. v. General Nutrition Center, Inc., 89 Md. App. 232, 597 A.2d 1049 (1991), where we also discussed the doctrine, dealt with a fee-shifting provision in a lease agreement between the parties. Maryland law is clear that the common core of facts doctrine may be applied to contractual fee-shifting. This is not fatal to the Henrys' argument, however, because, as we shall explain, application of the common core of facts doctrine is discretionary and was not required in this case.

of the asserted claims for relief.  It enlarges (rather than reduces) the wide discretion courts

enjoy in fashioning reasonable fee awards pursuant to contractual fee-shifting provisions.

The common core of facts doctrine derives from the Supreme Court's decision in

Hensley v. Eckerhart, 461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983).  That case

involved an award of attorney's fees to a prevailing plaintiff in federal civil rights litigation

pursuant to 42 U.S.C. § 1988.  Although Hensley was a statutory fee-shifting case, its

reasoning is compatible with a contractual fee-shifting analysis.  The "results obtained" are

a major factor common to both approaches.  See Rule 1.5(a)(4).

The issue before the Court in Hensley was whether, pursuant to 42 U.S.C. § 1988,

"a partially prevailing plaintiff may recover an attorney's fee for legal services on

unsuccessful claims."  Id. at 426, 103 S. Ct. at 1935-36.  At the outset, the Court noted that,

once a plaintiff establishes that he is entitled to a fee award, "[i]t remains for the [trial] court

to determine what fee is 'reasonable.'"  Id. at 433, 103 S. Ct. at 1939.  In the statutory fee-

shifting reasonableness inquiry, the lodestar method is merely the starting point.  The court

must consider the award in the context of the results the plaintiff obtained.

> The product of reasonable hours times a reasonable rate does not end
> the inquiry.  There remain other considerations that may lead the [trial] court
> to adjust the fee upward or downward, including the important factor of the
> "results obtained."  This factor is particularly crucial where a plaintiff is
> deemed "prevailing" even though he succeeded on only some of his claims for
> relief.  In this situation two questions must be addressed.  First, did the
> plaintiff fail to prevail on claims that were unrelated to the claims on which
> he succeeded?  Second, did the plaintiff achieve a level of success that makes
> the hours reasonably expended a satisfactory basis for making a fee award?

Id. at 434, 103 S. Ct. at 1940 (emphasis supplied).

Even though they may be part of the same lawsuit, services expended on "distinctly different claims for relief that are based on different facts and legal theories" than the successful claim must be excluded from a fee award. Id. at 434-35, 103 S. Ct. at 1940. On the other hand, where a plaintiff presents multiple claims "involv[ing] a common core of facts or ... based on related legal theories[, m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims." Id. at 435, 103 S. Ct. at 1940. In such a case, the trial court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Id.

The Court made clear that, in fashioning an award in a case with multiple claims, "[t]he result is what matters" and "the most critical factor is the degree of success obtained."

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.
>
> If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised

- 17 -

<u>in good faith.</u>  Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill.  <u>Again, the most critical factor is the degree of success obtained.</u>

<u>Id.</u> at 435-36, 103 S. Ct. at 1940-41 (emphasis supplied) (footnote omitted).

The Court reiterated that, in cases where the plaintiff achieves less than full success on all claims, the trial court has wide discretion to reduce a fee award accordingly.

There is no precise rule or formula for making these determinations. <u>The [trial] court</u> may attempt to identify specific hours that should be eliminated, or it <u>may simply reduce the award to account for the limited success.  The court necessarily has discretion in making this equitable judgment.</u> This discretion, however, must be exercised in light of the considerations we have identified.

<u>Id.</u> at 436-37, 103 S. Ct. at 1941 (emphasis supplied).

Thus, the Court held:

[T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988.  Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee.  Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the [trial] court did not adopt each contention raised.  <u>But where the plaintiff achieved only limited success, the [trial] court should award only that amount of fees that is reasonable in relation to the results obtained.</u>

<u>Id.</u> at 440, 103 S. Ct. at 1943 (emphasis supplied).

This Court first touched on the common core of facts doctrine in <u>Reisterstown Plaza Assocs. v. General Nutrition Center, Inc.</u>, 89 Md. App. 232, 597 A.2d 1049 (1991). In that case, RPA, a commercial landlord, had sued its tenant, GNC, a retail establishment, for

unpaid rent under a lease agreement. GNC counterclaimed, arguing, in part, that it had been constructively evicted due to an unresolved rodent problem. Both parties sought attorney's fees under a provision in the lease agreement. A jury returned a general verdict in favor of GNC, and the court awarded GNC damages and attorney's fees. On appeal, RPA argued that the fee-shifting provision in the lease applied to certain of GNC's defenses and counterclaims, but not others.

We held that GNC was entitled to a fee award under the lease for all fees incurred because "all of the expenses incurred by GNC were a result of the enforcement of the lease agreement." Id. at 244, 597 A.2d at 1055. GNC had successfully defended against RPA's lawsuit, "which was brought to enforce GNC's obligations under the lease," and "all of GNC's counterclaims ... were grounded in breaches by RPA of its duties and obligations as a landlord." Id. This included GNC's tort counterclaims for nuisance and negligence, which "arose out of the same transaction and required proof or denial of essentially the same facts." Id. at 246, 597 A.2d at 1056. We rejected RPA's argument that GNC should not be entitled to fees unless they could be "segregated" between contractual and extra-contractual claims. Id. We noted that RPA ignored a line of cases from Texas and Oregon holding that "[a] party may recover attorney fees rendered in connection with all claims if they arise out of the same transaction and are 'so interrelated that their prosecution or defense entails proof or denial of essentially the same facts.'" Id. at 245, 597 A.2d at 1056.

Similarly, the Court of Appeals touched on the difficulty that may arise in allocating

fees among different claims or parties in <u>Diamond Point Plaza Ltd. P'ship v. Wells Fargo</u>

<u>Bank, N.A.</u>, 400 Md. 718, 929 A.2d 932 (2007). That case involved two contractual fee-

shifting provisions: one located in a mortgage agreement, with respect to one set of

defendants, and the other located in a lease agreement, with respect to the other set of

defendants. The Court made clear that, when dealing with a mixture of claims that allow

fee-shifting and claims that do not, or separate fee-shifting claims involving different parties,

lawyers should be prepared to allocate fees and expenses to the appropriate claims. When

the interrelationship between different claims makes allocation impracticable or impossible,

however, that difficulty should not bar recovery of a fee award altogether.

> When that prospect of allocation exists, however, as it would when fee-shifting is possible and likely to be sought, the matter becomes more complex. <u>Some claims may allow fee-shifting while others may not, and the lawyer must be prepared to establish how much time is allocable to the claims for which fee-shifting is sought.</u> Similarly, as here, when separate claims, each allowing fee-shifting, are filed against different defendants, the lawyer must be prepared to establish how much time is allocable to the claims for which fee-shifting is sought against each of the defendants.

> <u>A precise allocation is not always practicable, however.</u> In drafting pleadings, motions, discovery, or memoranda that concern multiple claims, possibly against different defendants, it may not always be possible to make a precise allocation of time or expenses among those claims. A deposition, a telephone conversation, settlement negotiations, a court proceeding may involve several claims and several defendants. <u>It is not reasonable to expect the lawyer to have in tow an industrial engineer with a stop watch to measure how much time was devoted to one claim or another. Moreover, as MRPC 1.5 makes clear, time spent is not the only factor in determining reasonableness.</u>

> We quite agree that a party against whom a fee award is sought has a right to know the basis of the claim, so that it can be defended, and to require

the party seeking the award to establish, by a preponderance of the evidence, that party's right to the amount sought. <u>We agree as well that, where the fee request is based primarily on time spent – a form of lodestar – the best evidence ordinarily would be a clear delineation in the attorneys' billings of the time spent and expenses incurred with respect to the particular claims upon which the fee request is based. Because such a precise delineation may not always be practicable, however, we do not regard it as a sine qua non of the right to recover, for to conclude otherwise would, in many cases, deny all recovery where some recovery is clearly warranted.</u>

400 Md. at 760-61, 929 A.2d at 957-58 (emphasis supplied).

We dealt with the common core of facts doctrine in more depth in <u>Weichert Co. of Md. v. Faust</u>, 191 Md. App. 1, 989 A.2d 1227 (2010), <u>aff'd on other grounds</u>, 419 Md. 306, 19 A.3d 393 (2011). That case concerned a fee-shifting provision located within a non-solicitation clause in an employment contract between Weichert Co., a real estate brokerage, and Faust, a vice-president and manager. Faust had resigned from Weichert to join a competing brokerage firm and, within the next few months, 67 of the 82 agents she had managed at Weichert followed her to the new firm. We summarized the ensuing litigation as follows:

> Weichert alleged breach of contract, employee piracy, breach of fiduciary duty, and unfair competition. Faust brought counterclaims for Maryland Wage Act violations, breach of contract, fraud, and negligent misrepresentation. The jury found Faust liable only for breach of her duty of loyalty and awarded Weichert $250,000.00 in damages. On Faust's counterclaims, the jury found on one count that Weichert had violated the Maryland Wage Act and awarded Faust $116,000.00 in damages.
>
> After trial, both parties petitioned for attorney's fees and expenses under the Fee Provision of the Agreement. Faust sought attorney fees and expenses of $1,485,500.43, and Weichert sought fees and expenses totaling $2,203,037.65. The court denied Weichert's petition but granted Faust's

- 21 -

petition, awarding her $946,014.50 in attorney's fees.

191 Md. App. at 5-6, 989 A.2d at 1229 (footnotes omitted). We concluded that the fee-shifting provision was limited to litigation regarding the non-solicitation clause in the employment contract. As Faust successfully defended against Weichert's breach of contract claim, she was the prevailing party for fee-shifting purposes, despite Weichert's success on its breach of fiduciary duty claim and unrelated to Faust's success on her Wage Act claim. Id. at 9-10, 989 A.2d at 1231-32.

Weichert argued on appeal that the circuit court should not have applied the "common core of facts" doctrine to include in its award fees related to claims other than Weichert's breach of contract claim. We noted that the doctrine removes two concerns attendant to fee awards in cases with multiple claims or parties: allocation of cost and measurement of cost. We illustrated the problem as follows:

> For example, an attorney could ask a single deposition question whose answer is relevant to multiple claims. If only one claim gives rise to fees, should the party be able to recover fees for the time spent preparing and asking the question? It would seem so, but should they recover the fee in whole or in part? If in part, what part? Do we simply divide by the total number of claims, or do we use some ratio based on the proportion of recovery for each claim?

Id. at 17-18, 989 A.2d at 1236. If a fee-shifting claim and a non-fee-shifting claim are factually related, the common core of facts doctrine allows a court to bundle together in its award the total costs of both claims. "If the court finds that two claims are factually related, the doctrine not only awards the costs common to all claims, but also awards costs that arise

- 22 -

solely by virtue of the non-fee-shifting claim." Id. at 18, 989 A.2d at 1237.

On the facts before us in Weichert, we held that the court did not abuse its discretion in awarding Faust fees incurred on claims other than her defense of Weichert's breach of contract claim, which was the only claim directly related to the fee-shifting provision. "[A]ll of Weichert's claims alleged that Faust had solicited Weichert's employees to defect. Thus, disproving that fact was a necessary defense to each claim, and it formed the common factual core of the court's fee award." Id. at 20, 989 A.2d at 1237-38.[8]

Critical to our resolution of this appeal, our doctrinal holding in Weichert was not as sweeping as the Ochses might wish. We specifically held "that the 'common core of facts' doctrine comports with Maryland Law." Id. at 20, 989 A.2d at 1237 (emphasis supplied). We did not hold that the doctrine is mandatory. On the contrary, we specifically left open the possibility that another method of allocation could prove more reasonable in a particular case:

> Certain circumstances could make another method more reasonable, but we leave that to the discretion of the trial court.

Id. at 19-20, 989 A.2d at 1237 (emphasis supplied). In other words, trial courts may use the common core of facts doctrine in appropriate cases, but they are not necessarily required to do so in every case.

---

[8]This is not to say that Faust had achieved wholesale victory in the trial court. Despite the common core of facts doctrine, the circuit court awarded Faust less than two thirds of the fees she requested.

In the case now before us, we cannot say that the circuit court abused its discretion by fashioning a "proportionate award" instead of applying the common core of facts doctrine. In our view, the Ochses achieved success in this case in two respects: 1) through appellate mediation, they obtained fee simple title to their entire property from Dorchester County; and 2) through our decision in the first appeal, they avoided merger of the contract of sale with the deed so as to be able to pursue an award of attorney's fees against the Henrys. On remand from our earlier decision, the circuit court was required to follow our instruction to "view the case as it appeared when initiated," even though title issues had been resolved in appellate mediation. 202 Md. App. at 526 n.2, 33 A.3d at 483 n.2. In other words, the circuit court was required to recognize that the Ochses were entitled to a fee award from the Henrys, even though the Ochses' victory on the title issue was not a direct result of their litigation against the Henrys. The court was required to fashion a reasonable fee award to compensate the Ochses for expenses they incurred in the litigation. The court was not necessarily required to apply the common core of facts doctrine to award a fully compensatory fee as a reward for having achieved excellent results. See Hensley, 461 U.S. at 435-36, 103 S. Ct. at 1940-41.

The circuit court did not view the Ochses' first appellate victory as an excellent result. Rather, the court observed that, "[e]ven in the present posture of the case, the Henrys still prevail" on three out of the four counts of the Ochses' amended complaint. The court recalled its own familiarity with this case, having presided "throughout the pendency of this

- 24 -

litigation."  After reviewing the record and its own notes, the court concluded that "the majority of the time in trial and litigation effort put forth by [the Ochses] addressed the issue of willful fraud," whereas "only a small fraction of the effort expended towards litigation at the trial level focused on [the issue on which the Ochses succeeded on appeal]."[9]  Fraud and mutual mistake are indeed related; in fact, to some extent our decision in the first appeal came down to a process of elimination between the two.  See 202 Md. App. at 543, 33 A.3d at 493 ("Because the circuit court found the absence of fraud, there must have been mutual mistake.").  Nevertheless, the court was not required to ignore the fact that the Ochses had hung their hat on fraud at trial – which claim was not accepted at trial or on appeal – yet somehow prevailed on a related issue that they had virtually ignored at trial.  The court was free to consider, as part of the totality of the circumstances, the thin relationship between the Ochses' appellate success and the thrust of their efforts at trial.

If the court had made its decision before the Ochses filed their supplemental motion for fees on April 27, 2012, we also would have been hard pressed to find an abuse of discretion or error in the amount of the award.  In our view, the court's award was eminently reasonable with regard to the Ochses.  Indeed, the Henrys could legitimately complain that, from their point of view, the award was unreasonably large.  An important consideration is the award's relationship to "the principal amount in litigation."  See Congressional Hotel,

---

[9]The circuit court referred to this issue as "the breach of the special warranty against encumbrances."  We can only assume that the court meant to refer to the only issue on which we reversed in our first decision, mutual mistake of fact.

200 Md. App. at 500, 28 A.3d at 82. Although the Ochses did not specifically seek monetary damages in their complaint,[10] they have maintained, in their motion for fees on remand and in this appeal, that they stood to lose the entire $700,000.00 value of their property in the event that they were not able to obtain title to the 30-foot wide strip of land traversing the property.[11] The award granted is only about 31% of that $700,000 figure, but the Ochses' initial requested award of $333,354.00 would have been about 48% of that potential loss.[12]

---

[10] In the Ochses' complaint and amended complaint, they requested damages only as alternative relief and specified only "damages as may be appropriate."

[11] In their brief to this Court, the Ochses explain:

As discussed in the [Motion to Enter Award of Attorney's Fees], as a result of the Henrys' breach of contract, the Ochses: (i) were facing a Seven Hundred Thousand Dollar ($700,000.00) loss in the value of their property; (ii) would have possessed an unmerchantable virtually worthless property in which they had invested hundreds of thousands of dollars; and, (iii) were being slowly forced towards bankruptcy.

Appellants' Brief at 5 n.3, 21. As the purchase price for the property in 2001 was $325,000.00, we can only assume that the $700,000.00 figure represents the Ochses' estimation of the value of the property as of the 2012 motion for fees and includes the "hundreds of thousands of dollars" they had invested in the property since purchasing it in 2001. Although the Ochses' primary objective was some sort of equitable relief – gaining clear title to their entire property by some means, including the 30-foot wide strip of land – we can analogize their claimed potential loss in value of the property to an amount of claimed damages.

[12] We also note that, contrary to the Ochses' assertion on this appeal, the court awarded the Ochses all of the fees they claimed to have incurred in their successful first appeal to this Court, including fees they incurred successfully mediating the first appeal against Dorchester County. Although the court distinguished between various claims asserted at trial, the court

(continued...)

- 26 -

Nevertheless, we are constrained to vacate the court's award and remand for further consideration. Although we find no abuse of discretion in the circuit court's approach, we find two inconsistencies in how the court executed its stated intent in its July 12, 2012 opinion and order. The court stated its intent to award "the entirety of the post-trial and appeal costs," but appears to have ignored costs the Ochses incurred in successfully defending against the Henrys' petition for a writ of certiorari in the Court of Appeals after their victory in this Court on the first appeal. The court identified the Ochses' total requested award as $333,354.00. This was the amount the Ochses requested in their first motion for fees, filed on January 24, 2012. The court seems to have overlooked the supplemental motion the Ochses filed on April 27, 2012, which included costs incurred in the Court of Appeals and requested a total of $355,731.78. We shall remand for the circuit court to take the Ochses' April 27, 2012 supplemental motion into account in fashioning its award.

We also note that the court stated its intent to deduct from the Ochses' total requested award "three-fourths of the fees charged through the trial," and so deducted $114,731.40. According to the Ochses' initial motion for fees, they incurred $176,525.37 "up to the time of trial," three fourths of which would have been $132,394.03. The court will have the opportunity on remand to review its calculations and resolve any computational errors.[13]

---

[12](...continued)
made no distinction between costs incurred litigating against Dorchester County and costs incurred litigating against the Henrys.

[13]In their brief, the Ochses also request that we remand with instructions to the circuit
(continued...)

**JUDGMENT OF THE CIRCUIT COURT FOR DORCHESTER COUNTY VACATED. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.  COSTS TO BE SPLIT EQUALLY AMONG THE PARTIES.**

---

[13](...continued)
court to "award [them] their costs and expenses for this appeal."  Appellants' Brief at 25. Insofar as the Ochses' request involves additional attorney's fees for this appeal, we shall leave this to the circuit court's discretion on remand.